Submitted December 6, 2018, affirmed November 18, 2020

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# DARNELL JEAN LABOSSIERE,
*Defendant-Appellant.*

## Washington County Circuit Court
### 17CR09877; A164723

477 P3d 1

Defendant appeals a judgment convicting him of unlawful use of a weapon, ORS 166.220(1)(a), arguing that the trial court erred in declining to give the jury a witness-false-in-part instruction. Defendant argues that he was entitled to the instruction because the jury could have concluded that the victim had consciously given false testimony. The state responds that the court did not err because the victim's testimony did not support a reasonable inference that she had consciously lied at trial. *Held*: Even assuming that the court erred in declining to give the requested instruction, defendant has not established that the alleged error was prejudicial.

Affirmed.

Beth L. Roberts, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.

DeHOOG, P. J.

Affirmed.

**DeHOOG, P. J.**

Defendant appeals a judgment convicting him of unlawful use of a weapon (UUW), ORS 166.220(1)(a), arguing that the trial court erred in declining to give the jury a witness-false-in-part instruction as requested.[1] Defendant argues that he was entitled to the instruction because the jury could have concluded that the victim, S, had consciously given false testimony when she testified that defendant had swung a baseball bat at her head, contrary to her earlier statement to the police that defendant had wielded a wooden mop or broom handle in that manner. Defendant argues that he was prejudiced by the court's error because the state's theory supporting the UUW charge expressly relied on his alleged use of a bat. In response, the state contends that the court did not err in declining to give the requested instruction, because the victim's testimony did not support a reasonable inference that she had consciously lied at trial. We conclude that, even if it was error not to give the requested instruction, any such error was harmless. Accordingly, we affirm.

"[W]e 'review a trial court's failure to give a requested jury instruction for errors of law, and evaluate the evidence in the light most favorable to the establishment of the facts necessary to require the instruction.'" *State v. Payne*, 366 Or 588, 603, 468 P3d 445 (2020) (quoting *Ossanna v. Nike, Inc.*, 365 Or 196, 199, 445 P3d 281 (2019)).

At the time of the charged events, defendant lived with S, who was then his girlfriend, and an elderly woman, K. K suffered from various health issues, including limited eyesight, and S acted as her caretaker. At around 8:00 p.m. one evening, S and K were watching television in the living room when they heard a "loud bang" come from defendant's room. S went to defendant's room to check on him. S found defendant in an agitated state, and, when she entered defendant's room, he grabbed her by the back of the arm and pushed her out into the hallway. S's arm was bruised as a result. S returned to the living room and sent K's sister a cell phone text with the message "'9-1-1 call,

---

[1] Defendant was also convicted of resisting arrest, ORS 162.315, but he appeals only the UUW conviction.

please.'" Defendant then entered the living room carrying a wooden mop or broom handle and, according to S, began "banging it on the floor and swinging it around," threatening to smash the television unless one of the others turned it off. K, who could not clearly see defendant due to her vision problems, asked him why he was swinging her baseball bat, which she kept at the door for protection. In response, defendant in fact picked up K's bat and approached S.

S gave conflicting accounts as to what had happened next. Later the same night, S told the police that defendant had swung the bat at her head, stopping just short of making actual contact. Two weeks later, however, S described the incident differently. At that time, she told the police that defendant had swung the wooden stick at her head, and not K's bat. Finally, at trial, S once again described defendant as having swung a bat at her head, and not the wooden stick.

Aside from those discrepancies, the testimony at trial was largely consistent. The evidence showed that, for the next hour or so, defendant had intimidated S by hitting the floor, walls, and doors with the bat while staring at S and K. K's sister eventually arrived and came in, at which point she and K were able to call 9-1-1. During that call, K mistakenly said that defendant had hit S with a bat. At trial, K testified that defendant had swung a bat towards their heads but had not hit either of them; she explained that she had erroneously reported on the 9-1-1 call that defendant had hit S with the bat because she had heard a scuffle when S first went to check on defendant and "assumed he had hit her with the bat." The police arrived shortly thereafter, and, after a short struggle with defendant, arrested him.

Defendant was indicted on two counts of unlawful use of a weapon (one for actions allegedly directed towards S and another for actions alleged as to K), ORS 166.220(1)(a); fourth-degree assault, ORS 163.160; and resisting arrest, ORS 162.315. The jury found defendant guilty of resisting arrest and the count of unlawful use of a weapon related to S; the jury acquitted defendant of the remaining counts. As alleged in the indictment, the basis of defendant's unlawful-use-of-a-weapon conviction was his conduct in "carry[ing] or

possess[ing] a dangerous weapon, to wit: a bat, with intent to use said weapon unlawfully against [S].”

At trial, defendant asked the court to give the jury a witness-false-in-part instruction.[2] The applicable uniform jury instruction provides:

“Sometimes a witness may give incorrect or even inconsistent testimony. This does not necessarily constitute lying on the part of the witness. The witness’s testimony may be an honest mistake or confusion. The witness may simply forget matters, or his or her memory of an event may contain honest inconsistencies or contradictions. Also, different witnesses may observe or recount the same event differently.

“However, if you find that a witness has intentionally lied in part of his or her testimony, you may, but are not required to, distrust other portions of that witness’s testimony.

“As jurors, you have the sole responsibility to determine which testimony or portions of testimony you will or will not rely on in reaching your verdict.”

UCrJI 1029.

In requesting a witness-false-in-part instruction, defendant emphasized that, between her two statements to the police and her testimony at trial, S had given a total of three accounts of defendant’s conduct, which varied as to the critical question of whether defendant had swung a bat or a wooden stick at her head. Defendant argued that such a disparity was “more than kind of just a confusion.” Nonetheless, the trial court declined to give the requested instruction, reasoning that a court must consider whether there has been an act of willful perjury before giving such an instruction. Here, the court concluded that, even though there was “some confusion and some inconsistency” in S’s testimony, it was not “a situation where under oath there’s a willful perjury.”

---

[2] The record does not contain the text of the instruction that defendant requested. On appeal, however, defendant refers to the applicable uniform jury instruction, and the state does not dispute that the requested instruction was substantially the same.

On appeal, defendant argues that the trial court erred because there was sufficient evidence for the jury to infer that S had consciously given false testimony. Defendant emphasizes that S's trial testimony conflicted with "her inconsistent out-of-court statements and that those statements were also inconsistent with [K's] testimony." Defendant argues that the jury could reasonably have inferred that S had consciously given false testimony, because: (1) S gave conflicting accounts in her two police interviews and contradicted one of them at trial; (2) the conflicting statements related to "a central matter of the reported event"; and (3) "a person is unlikely to confuse a broom handle with a metal bat in the context of having it swung at one's head." Lastly, defendant emphasizes that K told the police that defendant had actually hit S with the bat. Those inconsistencies, defendant argues, "permit the inference that [S] consciously testified falsely, because that pattern of inconsistency around a central issue suggests that the incident, or that portion of it, was fabricated." Defendant further argues that the court's error was prejudicial and requires reversal because the credibility of S's testimony was critical to proving the state's specific theory, which was that defendant had swung a bat, and not a wooden stick, at her head.

The state responds that the trial court did not err in refusing to instruct the jury as requested. The state argues that the record does not support an inference that S testified falsely, because there was only "one inconsistency between [S's] account to police and her trial testimony." Quoting our decision in *State v. Walker*, 291 Or App 188, 194, 419 P3d 794 (2018), the state argues that the witness-false-in-part instruction was not required as a matter of law in this case because the inconsistency was "'the type of inconsistency common to mistake, confusion, or the differences in recollection that are innate to human perception.'" As a result, the state concludes, the trial court did not abuse its discretion in declining to give the requested instruction here.

Both parties characterize the trial court's refusal to give the witness-false-in-part instruction as a discretionary decision, which we would review for abuse of discretion. Following the briefing of this case, however, the

Supreme Court clarified the applicable standard of review in *Payne*. The court explained in *Payne* that, although we review a trial court's choice from among various requested instructions for abuse of discretion, 366 Or at 603 n 4, we review a trial court's complete refusal to give a requested jury instruction for legal error. 366 Or at 603. Because this appeal raises only the latter issue, we review for legal error.

As a general matter, "a criminal defendant is entitled to have the jury instructed in accordance with his or her theory of the case if the instruction correctly states the law and there is evidence to support giving it." *Payne*, 366 Or at 603 (internal brackets and quotation marks omitted). In specific regard to the witness-false-in-part instruction, trial courts are statutorily required to give the instruction "on all proper occasions." ORS 10.095(3). As the Supreme Court held in *Payne*, a "proper occasion" exists "when, considering the testimony and other evidence viewed in the light most favorable to the party requesting the instruction, the trial court concludes that sufficient evidence exists for the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue." 366 Or at 607.

Here, the trial court arguably focused on whether *it* believed that the evidence showed that S had perjured herself, rather than inquiring whether the evidence was sufficient for *the jury* to draw that inference, as *Payne* instructs. If, in fact, that was the trial court's focus, it was misdirected. We need not reach that issue, however. *Cf. State v. Kinstler*, 307 Or App 517, 478 P3d 595 (2020) (addressing whether the witness-false-in-part instruction was required and concluding that it was not). That is, even if we were to agree with defendant and conclude that the trial court had erred in declining to give the requested instruction, we would still be obligated to consider whether the court's error had been prejudicial. *See Payne*, 366 Or at 608-09 (analyzing whether a court's error for failing to give the witness-false-in-part instruction was prejudicial). Because, as we explain below, we conclude that defendant has not demonstrated that the alleged error was prejudicial, we need not reach the underlying merits of his argument on appeal. *See State v. Simon*,

294 Or App 840, 849, 433 P3d 385 (2018), *rev den*, 365 Or 502 (2019) (recognizing that a defendant has the burden of establishing that a court's error was not harmless).

"Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm the judgment below if we determine that there was 'little likelihood that the error affected the verdict.'" *Payne*, 366 Or at 609 (quoting *State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003)) (internal brackets omitted). In making that determination in the context of a court's refusal to give a requested jury instruction, we must "'consider[] the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Payne*, 366 Or at 609 (quoting *State v. Ashkins*, 357 Or 642, 660, 357 P3d 490 (2015)).

Here, defendant argues that the court's error requires reversal because S's testimony was critical to the state's theory of the UUW charge—that defendant had swung a baseball bat at her head. Defendant seemingly acknowledges that the jury's acquittal of him on the fourth-degree-assault charge indicates some skepticism of S's testimony notwithstanding the lack of a witness-false-in-part instruction; however, he focuses his prejudice argument on the UUW charge.[3] Defendant argues that, in light of the specific factual basis for the UUW allegation, that is, that defendant had "carr[ied] or possess[ed] a dangerous weapon, to wit: *a bat*, with intent to use said weapon unlawfully against [S]," (emphasis added), the jury could have reasonably inferred that S consciously shaded her testimony so as to support that allegation, which her previous statement that defendant had swung a mop or broom handle at her would not

_____

[3] With respect to the fourth-degree assault charge, defendant was indicted for "unlawfully and recklessly caus[ing] physical injury to [S]." Defendant acknowledges that the factual basis for the fourth-degree assault charge was S's allegation that defendant had grabbed her by the arm and forcefully shoved her into the hallway, leaving bruises on her arm. We note that defendant was acquitted of that charge and, thus, giving the witness-false-in-part instruction would not have affected that verdict. Defendant does not contend that the jury could have inferred that S consciously testified falsely about the facts in support of the fourth-degree assault charge or that, as a result of *that* testimony, the instruction could have had an effect on the UUW verdict that he now appeals.

have done. As a result, defendant argues, we cannot conclude that the court's failure to give the witness-false-in-part instruction had "little likelihood" of affecting the guilty verdict on that charge. In defendant's view, the "purpose" of the witness-false-in-part instruction "is to guide the jury in how they may properly consider the testimony of someone who consciously testifies falsely *in one part* of her testimony." (Emphasis in original.) Defendant argues that, because the jury did not receive that guidance, "it cannot be said that the error was unlikely to have affected the verdict."

We disagree that any error in declining defendant's request was prejudicial. In support of our conclusion that any error here was harmless, we again rely on the Supreme Court's decision in *Payne*. In *Payne*, the defendant was convicted of third-degree sexual abuse after the complainant had reported a sexual encounter with him as nonconsensual, while the defendant maintained that the encounter had been consensual. 366 Or at 590-91. At trial, the officer who had taken the complainant's account of the encounter testified that the complainant had given a race-based description of the defendant as a part of her explanation for why she had been unable to leave the encounter. *Id.* at 592. In her testimony at trial, however, the complainant repeatedly denied having described the defendant in terms of his race, and, during cross-examination, she protested that defense counsel was trying to portray her as a racist. *Id.* at 591. The defendant requested the uniform witness-false-in-part jury instruction, but the trial court rejected his request. *Id.* at 593. Ultimately, the Supreme Court held that the trial court had erred and that the error was harmful. *Id.* at 608, 611. In drawing those conclusions, the court rejected the state's rationale that any error was harmless because, in part, "the jury was adequately instructed on how to evaluate the credibility of witnesses" and "the instruction demands nothing of the jury and merely conveys a common-sense principle." *Id.* at 609 (internal quotation marks omitted).

The court reasoned in *Payne* that "the general jury instructions did not tell the jury what it could do if it determined that a witness consciously testified falsely and so did not constitute the equivalent of the witness-false-in-part

instruction."[4] *Id.* at 609. Additionally, the court described three benefits that the instruction would provide a jury. First, "the witness-false-in-part instruction serves an important advisory function because it informs a jury of its duty to scrutinize a witness's testimony." *Id.* at 610. Second, it "undercuts the presumption that sworn testimony is truthful." *Id.* And third, it "permits the jury to draw an inference that a willfully false witness who has violated her oath in one particular [portion of her testimony] may have well done so in others." *Id.*

Ultimately, the court concluded that the refusal to give the instruction was prejudicial due to its potential role in guiding the jury's ultimate decision whether to believe the complainant or the defendant as to the issue of consent. *Id.* The court reasoned that, because there had been a permissible inference that the complainant had willfully lied about whether she had described the defendant in racial terms, the instruction would have "inform[ed] the jury of its ability to distrust other portions" of her testimony and assisted the jury in making the determination as to which party was being truthful about the nature of their encounter. *Id.*

Here, the alleged error could not similarly have prejudiced defendant. The focus of defendant's appeal is his conviction for UUW related to S. As defendant frames it, the state's theory with respect to that count "was that defendant had swung the charged weapon, the bat, against [S]'s head." And, defendant reasons, that was the specific

---

[4] The Supreme Court summarized the relevant general jury instructions given in *Payne* and the state's argument about them:

"The jurors were instructed that, 'in evaluating each witness's testimony,' they could consider 'the manner in which the witness testified,' 'the nature or quality of the witness's testimony,' 'evidence that contradicts the testimony of the witness,' and 'evidence concerning the bias, motives, or interests of the witness.' According to the state, those instructions, coupled with the general instructions that the jury had the 'sole responsibility to make all of the decisions about the facts in the case' and was required to 'evaluate the evidence to determine how reliable or how believable that evidence is,' adequately told the jury of its duty to assess the complainant's credibility."

366 Or at 609. The state does not make that argument here. Nevertheless, we note that the jury was given general instructions almost identical to those that the court discussed in *Payne*.

fact as to which S had been inconsistent. Thus, according to defendant, the ultimate factual determination that the jury was required to make in reaching its verdict was the very fact that the requested instruction would have drawn into focus. In defendant's view, therefore, the trial court's refusal to give the instruction was prejudicial. For the reasons that follow, however, we disagree.

As the Supreme Court's holding in *Payne* reflects, the principal purpose of the witness-false-in-part instruction is to assist the jury in assessing the credibility of a witness's testimony once it has found that the witness has perjured herself *in some other aspect* of her testimony. *See* 366 Or at 610 (one purpose of instruction is to "inform[] the jury of its ability to distrust other portions of a witness's testimony"). The instruction is not intended to assist the jury in determining whether a witness has testified falsely in the first instance. Here, however, defendant's argument differs significantly from the rationale in *Payne*. Defendant does not argue that, because S perjured herself as to defendant's weapon of choice, she may also have testified falsely as to some other aspect of the case. Rather, defendant emphasizes that the evidence supported the inference that S perjured herself as to the "critical issue" of whether he had swung a baseball bat at her head. Thus, the purpose that defendant identifies for giving the instruction here does not align with *Payne*.

Defendant's theory as to *how* S perjured herself precludes a finding of prejudice. That is so for two reasons. First, the jury's guilty verdict on the UUW charge at issue indicates that the jury did not believe that S had lied about defendant's asserted "critical issue," despite the evidence of S's inconsistent accounts as to what particular weapon defendant had unlawfully used against her. Thus, even if the trial court had given the requested instruction, the jury's finding regarding the "critical issue" would have been the same.

Second, in contrast to *Payne*, even if the jury in this case had determined that S's testimony about defendant's use of a bat was false, defendant does not identify any *other* jury findings that the witness-false-in-part instruction could

have informed. Defendant does not contend, for example, that, because the jury could have found that S lied about the specific weapon that defendant had used, it might therefore have found that defendant did not use a weapon against her at all. *See id.* (instruction informs jury's assessment of *other* parts of a witness's testimony). Thus, whether or not S's inconsistencies rendered the witness-false-in-part instruction appropriate in this case, defendant has not established that he suffered harm as a result of the trial court's alleged error. Accordingly, we affirm.

Affirmed.