Submitted on remand from the Oregon Supreme Court October 2, affirmed
November 18, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TYLER SCOTT KINSTLER,
*Defendant-Appellant.*

Washington County Circuit Court
17CR45757; A167035

478 P3d 595

In *State v. Kinstler*, 299 Or App 402, 447 P3d 1221 (2019), this court rejected defendant's assignment of error to the trial court's decision not to deliver the statutory witness-false-in-part instruction, ORS 10.095(3), at defendant's jury trial. The Oregon Supreme Court vacated and remanded that decision for reconsideration in light of its decision in *State v. Payne*, 366 Or 588, 468 P3d 445 (2020), which held that the determination whether to give such an instruction is a question of law rather than discretionary. On remand, defendant renews his contention that the trial court should have issued the witness-false-in-part instruction because the victim's testimony was inconsistent with statements that he had made to the police. *Held*: The trial court did not err. The victim's testimony, at worst, presented an example of a witness's selective choice of words to downplay his potential role in triggering defendant's actions. Under *Payne*, 366 Or at 607, such minimizations, even if conscious, are not falsehoods that make the delivery of the witness-false-in-part instruction proper.

Affirmed.

On remand from the Oregon Supreme Court, *State v. Kinstler*, 366 Or 825, 470 P3d 370 (2020).

Beth L. Roberts, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent

Before Lagesen, Presiding Judge, and Powers, Judge, and Kistler, Senior Judge.

LAGESEN, P. J.

Affirmed.

Kistler, S. J., concurring.

## LAGESEN, P. J.

This appeal, in which defendant challenges the trial court's decision not to deliver the statutory witness-false-in-part instruction, ORS 10.095(3), is before us on remand from the Supreme Court. *State v. Kinstler*, 366 Or 825, 470 P3d 370 (2020) (*Kinstler II*). Initially, we rejected defendant's claim of error in a per curiam decision relying on our decision in *State v. Payne*, 298 Or App 438, 447 P3d 71 (2019), *rev'd*, 366 Or 588, 468 P3d 445 (2020). *State v. Kinstler*, 299 Or App 402, 447 P3d 1221 (2019) (*Kinstler I*). Then, the Supreme Court reversed our decision in *Payne*, *State v. Payne*, 366 Or 588, 468 P3d 445 (2020), and vacated and remanded our decision in *Kinstler I* for reconsideration in light of its decision in *Payne*. *Kinstler II*, 366 Or 825. On reconsideration under the standard announced in *Payne*, we conclude that the trial court correctly declined to deliver the witness-false-in-part instruction.

A jury convicted defendant of fourth-degree assault, ORS 163.160, and menacing, ORS 163.190. The convictions arose from defendant's attack on M, a man cleaning the end of his driveway with a leaf blower. According to M, he was using the leaf blower, and defendant took offense to that and then charged at him. M turned off the leaf blower when he saw defendant "but there was dust in the air." At that point, M realized defendant was talking and heard defendant threaten to shoot him. M apologized but defendant ran at him. M used the leaf blower to keep the distance between them, but defendant "just knocked it out of the way and punched me in the side of the head and knocked me down, broke my shoulder."

According to the statements that defendant made to police,[1] he had been walking home from Target, where he had bought a soda, when he passed by M's house where M was doing yardwork with his leaf blower. M "looked right at him and then blew yard debris and dirt all over him." Defendant asked M "if he needed an attitude adjustment," M said something back and poked defendant in the stomach

---

[1] Defendant did not testify, but the statements that he made to police about the incident were admitted at trial.

with the leaf blower in a way that caused him significant pain (describing it as a "4 or a 5" on a "1 to 6 scale"), and then defendant punched M, told him to never touch him again, and walked off. Defendant told police that M "had disrespected him," and that "he was defending himself from a man who hit him with a leaf blower." Consistent with that statement, at trial, defendant claimed self-defense, arguing that his punching M was a justifiable response to M's poking him with the leaf blower.

At trial, defendant requested that the trial court deliver the witness-false-in-part instruction, Uniform Criminal Jury Instruction (UCrJI) 1029. Defendant's theory was that M and his daughter, who also testified, had made prior inconsistent statements to the police that would allow for the inference that they were consciously lying. The court denied the request, noting that "there was nothing that indicated to me that the witnesses were perjuring themselves."

On appeal, defendant argues that was error. Focusing on what defendant views as discrepancies in (1) M's testimony on direct examination about when he turned off the leaf blower; (2) M's testimony on cross-examination about when he turned off the leaf blower; (3) M's statements to police about when he turned off the leaf blower; and (4) defendant's statements to the police about M looking at him and blowing debris at him, defendant argues that the jury could infer from those discrepancies that M "willfully testified falsely," so as to require the delivery of the instruction. The state responds that the discrepancies identified by defendant are not the sort that allow for the inference that M testified falsely. The state also argues that any error in failing to deliver the instruction was harmless. Considering the record in light of the Supreme Court's decision in *Payne*, as the Supreme Court has directed us to do, we agree with the state that the discrepancies in testimony identified by defendant are not the sort that support the delivery of the witness-false-in-part instruction.

ORS 10.095 supplies a number of jury instructions that a trial court must deliver "on all proper occasions." ORS 10.095. One of those instructions is "[t]hat a witness false in one part of the testimony of the witness may be distrusted

in others," ORS 10.095(3), an instruction captured by UCrJI 1029, the instruction requested by defendant.[2]

In *Payne*, the Supreme Court considered what is a "proper occasion" within the meaning of ORS 10.095 for delivering the witness-false-in-part instruction. *Payne*, 366 Or at 600. It held:

> "[A] 'proper occasion' to give the statutory witness-false-in-part instruction exists when, considering the testimony and other evidence viewed in the light most favorable to the party requesting the instruction, the trial court concludes that sufficient evidence exists for the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue."

*Id.* at 607. The court held further that the determination whether that standard is met presents a question of law, subject to appellate review for legal error, overruling long-standing precedent holding that the delivery of the instruction was a matter of discretion for the trial court, subject to appellate review for abuse of discretion. *Id.* at 600-07.

In light of *Payne*, the inquiry for us is whether the testimony and evidence, viewed in the light most favorable to defendant, is legally sufficient to support a finding that at least one witness testified falsely and, if so, whether that false testimony concerned a material issue. *Id.* at 600, 607. In conducting that inquiry, we focus on the testimony and evidence identified by defendant as supporting the instruction. *Id.* at 600 (explaining that, in determining whether to give the instruction, a court is to "consider[] the testimony and other evidence a party has brought to the court's attention in support of the requested instruction").

---

[2] UCrJI 1029 provides:

"Sometimes a witness may give incorrect or even inconsistent testimony. This does not necessarily constitute lying on the part of the witness. The witness's testimony may be an honest mistake or confusion. The witness may simply forget matters, or his or her memory of an event may contain honest inconsistencies or contradictions. Also, different witnesses may observe or recount the same event differently.

"However, if you find that a witness has intentionally lied in part of his or her testimony, you may, but are not required to, distrust other portions of that witness's testimony.

"As jurors you have the sole responsibility to determine which testimony or portions of testimony you will or will not rely on in reaching your verdict."

Here, the testimony and evidence identified by defendant concerns the issue of when M turned off the leaf blower. Defendant argues that M's "initial statement to the police and testimony on cross examination contradicted [M]'s testimony on direct examination that he turned off the leaf blower when he saw defendant." That, according to defendant, would allow a jury to conclude that M "willfully testified falsely" when he testified that he turned off the leaf blower when he saw defendant.

Assuming that the issue of when M turned off the leaf blower is a material one (although it was not the focus at trial; the focus was M's use of the leaf blower against defendant when defendant came at him, and defendant's response to being "poked" by the leaf blower), the evidence identified by defendant is legally insufficient to support a finding that M consciously testified falsely about when he turned off the leaf blower. Although there are some discrepancies in the evidence on that point, none is the sort of conflict that makes it inferable that M was lying about it. That evidence is as follows:

- M's testimony on direct examination that "the defendant was coming this way, and I saw him, and I turned the blower off, but there was dust in the air, and he apparently took offense to that and started dropping F-bombs on me."

- The following line of inquiry on cross-examination:

"[Defense Counsel:]   And I think, at that point, you told the police that you surmised you must have blown dust at [defendant], but it was unintentional?

"[M:]   Yes. Soon as I saw him, I turned the blower off.

"[Defense Counsel:]   Okay. So I think, on direct examination, you said you turned the blower off, you saw him walk up, you had a conversation with him, and there must have still been dust in the air.

"[M:]   I didn't have a conversation with him. He was the one that was having the conversation.

"[Defense Counsel:]   Okay. So the point I'm trying to make is you did not turn off the blower prior to him communicating with you. You didn't see him coming, turn off the blower, and have dust still in the air, right?

"[M:]   Right.

"[Defense Counsel:]   You were blowing, and you heard somebody yelling profanity at you?

"[M:]   I didn't hear him because the blower was on, but I saw him, so I turned the blower off. And he was apparently yelling stuff at me while the blower was on, but I didn't hear him until I turned it off.

"[Defense Counsel:]   Okay. Well, I think you told the police that you did not see [defendant] and suddenly heard someone yelling the F word at you.

"[M:]   Okay.

"[Defense Counsel:]   So is that an accurate statement?

"[M:]   Well, like I say, at the time, I was in shock, so I'm not sure what I said six months later. What I'm saying is that I look both directions when I'm blowing, and if I see somebody coming, I turn the blower off. When I saw him, I turned the blower off."

- M's statements to the police that "he must have blown dust at [defendant] but it was unintentional."

- Defendant's statement to police that M had "looked right at him and then blew yard debris and dirt all over him."

None of that evidence gives rise to a reasonable inference that M consciously lied about the start of his encounter with defendant and when he turned off the leaf blower. The discrepancies, even when viewed in the light most favorable to defendant, are of the type that suggest lapses in memory, differences in perspective, and, at worst, an example of a witness's selective choice of words to downplay his potential role in triggering defendant's actions. Although the evidence does give rise to the inference that M did not turn off the blower before he blew dust and debris on defendant, M never claimed as much. That is, M did not deny that he had blown dust and debris over defendant, or assert that he had been able to turn the blower off on a dime when he noticed defendant. It is true that M's characterization of the incident on direct examination and use of the passive voice to note the "dust in the air" ("I turned the blower off, but there was dust in the air") may have minimized his role in triggering

defendant's response. But, as we understand the case law, such minimizations, even if conscious, are not falsehoods that make the delivery of the witness-false-in-part instruction proper.

Affirmed.

**KISTLER, S. J.,** concurring.

I join the majority's opinion and write separately only to note that, in light of *State v. Payne*, 366 Or 588, 468 P3d 445 (2020), the uniform witness-false-in-part instruction may be incomplete and thus incorrect. Currently, the witness-false-in-part instruction is phrased as a permissive inference. *See* UCrJI 1029 (setting out the witness-false-in-part instruction); *Sandstrom v. Montana*, 442 US 510, 514-17, 99 S Ct 2450, 61 L Ed 2d 39 (1979) (distinguishing permissive inferences from conclusive and rebuttable presumptions).[1] It tells the jury that, if it finds that a witness "has intentionally lied in part of his or her testimony, you may, but are not required to, distrust other portions of that witness's testimony." UCrJI 1029. By its terms, the instruction requires only that the jury find a single predicate fact—that a witness "intentionally lied" in part of his or her testimony—before the jury may infer from that fact that other parts of the witness's testimony are not trustworthy.

In *Payne*, the court explained that, as a result of longstanding caselaw, a jury must find two predicate facts before drawing that permissive inference: The jury must find "that at least one witness consciously testified falsely *and* that the false testimony concerns a material issue." 366 Or at 600, 607 (explaining that the instruction should be given when a reasonable juror could find those two predicate facts (emphasis added)). Given *Payne*, the uniform jury instruction appears incomplete. It does not require that the jury find that one part of a witness's testimony was both false and material before it may infer from those predicate facts that other parts of the witness's testimony should be

---

[1] Until 2013, the statutory form of the instruction was phrased as an unconstitutional conclusive presumption, at least as applied to a criminal defendant. *See Payne*, 366 Or at 599-600 (describing statutory history); *Sandstrom*, 442 US at 523-24 (explaining that conclusive and rebuttable presumptions, when applied to criminal defendants, unconstitutionally lessen the state's burden of proof).

distrusted. It requires only that the jury find that part of the witness's testimony was false.

I recognize that, in *Payne*, the court did not uphold the trial court's refusal to give the defendant's requested uniform jury instruction on the ground that the requested instruction was not correct in all respects. The court reversed the trial court's judgment and remanded. However, the state never raised this issue in either the Court of Appeals or the Supreme Court in *Payne*, and the court may have declined to address it for that reason. In any event, in my view, the reasoning in *Payne* suggests that the uniform instruction, as it is currently written, is incomplete and thus incorrect. With that observation, I concur in the majority's opinion.