Argued and submitted September 28; convictions for first-degree sexual abuse
(Count 1) and third-degree sexual abuse (Count 2) reversed and remanded
for entry of a single conviction for first-degree sexual abuse, remanded for
resentencing, otherwise affirmed October 26, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN NATHANIEL LUGO,
*Defendant-Appellant.*

Washington County Circuit Court
19CR76877; A176818

520 P3d 917

Defendant appeals a judgment convicting him of first-degree sexual abuse (Count 1), ORS 163.427, and third-degree sexual abuse (Count 2), ORS 163.415. He raises two assignments of error. First, he argues that the trial court erred when it denied his motion for judgment of acquittal on Count 1, because the evidence is legally insufficient to show that the victim was "physically helpless" as that term is used in ORS 163.427. Second, he argues that the trial court plainly erred by failing to merge the verdict for third-degree sexual abuse (Count 2) with the verdict for first-degree sexual abuse (Count 1). *Held*: The trial court did not err when it denied defendant's motion for judgment of acquittal; the evidence was sufficient for a factfinder to find beyond a reasonable doubt that, at the time of the sexual contact, the victim was in a state sufficiently similar to the victim in *State v. Marker*, 263 Or App 669, 329 P3d 781 (2014), to render her incapable of consenting to defendant's sexual contact and was thus "physically helpless." The trial court did, however, plainly err in failing to merge the verdict for third-degree sexual abuse (Count 2) with the verdict for first-degree sexual abuse (Count 1).

Convictions for first-degree sexual abuse (Count 1) and third-degree sexual abuse (Count 2) reversed and remanded for entry of a single conviction for first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

Janelle F. Wipper, Judge.

Andy Simrin argued the cause for appellant. Also on the brief was Andy Simrin PC.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Convictions for first-degree sexual abuse (Count 1) and third-degree sexual abuse (Count 2) reversed and remanded for entry of a single conviction for first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment convicting him of first-degree sexual abuse (Count 1), ORS 163.427, and third-degree sexual abuse (Count 2), ORS 163.415. He assigns error to (1) the trial court's denial of his motion for judgment of acquittal on Count 1, and (2) its failure to merge the verdicts for Count 1 and Count 2. For the reasons that follow, we reverse and remand for merger of verdicts on Counts 1 and 2, remand for resentencing, and otherwise affirm.[1]

"We review a trial court's denial of a motion for a judgment of acquittal for legal error, and we consider the facts in the light most favorable to the state and draw all reasonable inferences in the state's favor," to determine "whether the evidence is sufficient to permit a rational fact-finder to find all the elements of the charged crime beyond a reasonable doubt." *State v. Yerton*, 317 Or App 538, 539, 505 P3d 428 (2022). Consistent with that standard, we briefly state the facts underlying defendant's conviction on Count 1.

The state charged defendant with first-degree sexual abuse (Count 1) on the theory that defendant had subjected the victim, C, to sexual contact of an intimate area while C was physically helpless. At trial, witnesses for the state testified that, on the morning of the incident, C had worked an approximately 11-hour shift before returning at around 3:30 a.m. to the house where she was staying with her boyfriend. At around 5:00 a.m., C's boyfriend got up and left for work. C remained in bed because she "was exhausted from working" and "was passing out." She "was naked in the bed" and "had the blankets kind of tucked between her knees" such that "her backside was exposed." Defendant— who is the stepbrother of C's boyfriend—was staying at the house in an adjoining room.

Shortly after C's boyfriend left for work, C "woke[] up to a hand running down from her shoulder to her butt." At first, C felt something touching her shoulder, but she was

_____

[1] In a third assignment of error, defendant contends that the trial court abused its discretion when, with respect to Count 1, it decided not to impose a downward departure sentence of 75 months rather than the presumptive life sentence for repeat sex offenders prescribed by ORS 137.719(1). We reject that argument without discussion.

"just waking up" and had "a lot of confusion," thinking "why is [my boyfriend] back so early?" The touching then became "a stroke or a brush" that went "down to the bottom area" and touched "an intimate area where you don't want people to touch." C was "very tired" and had just "started coming to" and "didn't know what was going on." C "rolled over and saw that it was [defendant]" and "realized [that] something [wa]s really bad."[2]

After the state rested, defendant moved for judgment of acquittal on Count 1, arguing that the state had failed to prove C was "physically helpless." The trial court denied defendant's motion, explaining,

"[C] testified that she had gone to bed after being up for a very long period of time and had worked very hard that evening. She was passed out because of exhaustion [from] work.

"I will also note for the record that the testimony supports the fact that she was starting to wake up and was trying to make sense of what was happening. *** But it is not clear until after the act is completed as to what's actually happening ***.

"So, based on that, in the light most favorable to the state, I do believe that a rational fact finder could find that [C] was physically helpless[.]"

Defendant now appeals, arguing that the trial court erred when it denied his motion for judgment of acquittal on Count 1, because the evidence is legally insufficient to show that the victim was "physically helpless" as that term is used in ORS 163.427.

Under ORS 163.427, a person commits the crime of sexual abuse in the first degree when that person "[s]ubjects another person to sexual contact and *** [t]he victim is incapable of consent by reason of being *** physically helpless[.]"[3] A person is "physically helpless" when that person

---

[2] C testified that the touching "was pretty quick" but might have lasted 15 seconds or "something like that," but she "d[id]n't know" for certain.

[3] "Sexual contact" means, in part, "any touching of the sexual or other intimate parts of a person[.]" ORS 163.305(5). Defendant does not dispute that "sexual contact" occurred in this case.

"is unconscious or for any other reason is physically unable to communicate unwillingness to an act." ORS 163.305(4).

This court previously addressed the meaning of the term "physically helpless," as used in ORS 163.305(4), in *State v. Marker*, 263 Or App 669, 329 P3d 781 (2014). In *Marker*, the victim had been asleep and "awoke during the night and felt [the] defendant's hand in her pants in her vagina playing with it." *Id.* at 670 (brackets and internal quotation marks omitted). We construed the term "physically helpless," and we concluded that "a victim who is asleep when the sexual abuse occurs is incapable of consent by reason of being 'physically helpless.'" *Id.* In reaching that conclusion, we observed that a legislative report providing examples of "physically helpless" listed, among others, sleeping persons; however, we noted that those "were given as *examples,* not as an exhaustive list, of persons that would qualify under the definition of 'physically helpless.'" *Id.* at 673 (emphasis in original). Additionally, in examining the statutory text, we explained that the reason that a person in a state of sleep is physically helpless is, in part, because such a person "is not * * * *fully* possessed of one's mental faculties" and "is not in a state * * * wherein *all* one's mental powers have returned." *Id.* at 672-73 (emphases added).

Here—viewing the facts in the light most favorable to the state and drawing all reasonable inferences in the state's favor—the evidence is sufficient for a rational factfinder to find beyond a reasonable doubt that C was physically helpless when defendant subjected C to sexual contact. The evidence shows that C "woke[] up to a hand running down from her shoulder to her butt"; that she was "very tired" and was "just waking up" and had just "started coming to" during the touching; and that, as a result, she had "a lot of confusion" and "didn't know what was going on" during the touching. That evidence is sufficient for a factfinder to find beyond a reasonable doubt that, similar to the victim in *Marker*, C was not "*fully* possessed of [her] mental faculties" and "not in a state * * * wherein *all* one's mental powers have returned" when defendant subjected her to the sexual contact and, consequently, that C was in a state such that she was incapable of consent by reason of being physically helpless. *Marker*, 263 Or App at 672-73 (emphases added). Put

differently, C was physically helpless because, at the time of the touching, she was in a state sufficiently similar to the victim in *Marker* to render her incapable of consenting to defendant's sexual contact. We therefore conclude that the trial court did not err when it denied defendant's motion for judgment of acquittal.

Turning to defendant's second assignment of error, he argues that the trial court plainly erred by failing to merge the verdict for third-degree sexual abuse (Count 2) into the verdict for first-degree sexual abuse (Count 1). He acknowledges that that argument is unpreserved but contends that it qualifies for plain-error review. The state concedes that the error qualifies for plain-error review and that this court should reverse and remand for correction of the merger error and resentencing. We agree with and accept the state's concession, and we exercise our discretion to correct the error. *See State v. Barnes*, 209 Or App 332, 338, 147 P3d 936 (2006), *rev den*, 342 Or 256 (2007) ("[W]e conclude that sexual abuse in the third degree merges into sexual abuse in the first degree."); *see also State v. Benson*, 309 Or App 422, 440, 483 P3d 689, *aff'd*, 370 Or 58, 514 P3d 491 (2021) (accepting state concession and exercising discretion to correct trial court's plain error in failing to merge guilty verdicts for second-degree sexual abuse and first-degree rape).

Convictions for first-degree sexual abuse (Count 1) and third-degree sexual abuse (Count 2) reversed and remanded for entry of a single conviction for first-degree sexual abuse; remanded for resentencing; otherwise affirmed.