No. 596 August 28, 2024 577

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOB CUESTA POZOS,
*Defendant-Appellant.*

Washington County Circuit Court
20CR64595; A179575

Erik M. Bucher, Judge.

Argued and submitted June 17, 2024.

Marc Brown, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed and remanded.

## JOYCE, J.

Defendant reported his 17-year-old stepdaughter, L, as a runaway to the Beaverton Police Department. When she returned home, L and her younger sister, A, told police that defendant had repeatedly sexually abused them. The state charged defendant with seven counts of first-degree sexual abuse, ORS 163.427(1), and a jury found defendant guilty on all counts. On appeal, defendant challenges his convictions in six assignments of error, which reduce to four arguments. He argues that the trial court erred (1) by denying his motion to suppress evidence derived from an unlawful interrogation, (2) by denying his request for a "witness false in part" instruction despite some evidence that L and A's mother testified falsely, (3) by denying his three motions for judgment of acquittal (MJOAs) despite legally insufficient evidence that L was less than 14 years old at the time of the charged conduct, and (4) by failing to instruct the jury *sua sponte* as to the culpable mental state for first-degree sexual abuse. As we explain below, we find no error in the trial court's suppression ruling, but we agree that it erred in the other three respects. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## MOTION TO SUPPRESS

We begin by briefly addressing defendant's first assignment of error, in which he challenges the denial of his motion to suppress. Below, defendant sought to suppress the evidence derived from what he asserted to be an unlawful police interrogation, because that interrogation took place in "compelling circumstances" and without *Miranda* warnings. The trial court denied the motion, determining that the circumstances were not "compelling" and, consequently, *Miranda* warnings were not constitutionally required. *See State v. Nolen*, 333 Or App 376, 380, 552 P3d 741 (2024) (explaining that, under Article I, section 12, of the Oregon Constitution, officers must provide *Miranda* warnings to a suspect before interrogating them if the suspect is in "compelling circumstances"). Defendant reprises his argument on appeal. Although we do not address the issue at length here, suffice it to say that we have evaluated the record in light of the applicable legal standard, and we agree with

the trial court that the circumstances were not "compelling" and, thus, the interrogation was not rendered unlawful by the officers' failure to provide *Miranda* warnings.

## "WITNESS FALSE IN PART" INSTRUCTION

We turn next to defendant's fifth assignment of error, in which he challenges the trial court's refusal to give a "witness false in part" jury instruction.[1] ORS 10.095(3)[2] requires that instruction when, "viewing the evidence in the light most favorable to the party requesting the instruction, the evidence is sufficient 'for the jury to decide that at least one witness consciously testified falsely' concerning 'a material issue.'" *State v. Howard*, 325 Or App 696, 714, 529 P3d 247, *rev den*, 371 Or 333 (2023) (quoting *State v. Payne*, 366 Or 588, 607, 468 P3d 445 (2020)). In such circumstances, a trial court must instruct the jury that "a witness false in one part of the testimony of the witness may be distrusted in others." ORS 10.095(3). That instruction "serves an important advisory function because it informs a jury of its duty to scrutinize a witness's testimony, undercuts the presumption that sworn testimony is truthful, and permits the jury to draw an inference that a willfully false witness who has violated her oath in one particular may well have done so in others." *Payne*, 366 Or at 610.

Below, defendant requested the instruction because there was a factual contradiction in the testimony of two witnesses of such a nature that the jury could find that one witness consciously testified falsely concerning a material

---

[1] Although our typical practice is to address challenges to the sufficiency of the evidence prior to claims of instructional error, we are taking the inverse approach here because the instructional error provides greater relief (*i.e.*, reversal and remand for a new trial on *all* counts). Whereas the challenges to the sufficiency of the evidence involve only three counts and, as we explain below, still allow the state to retry defendant for lesser-included offenses on those counts.

[2] ORS 10.095(3) provides:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:

"*****

"(3) That a witness false in one part of the testimony of the witness may be distrusted in others[.]"

issue. Detective Cynthia Herring testified that L and A's mother reported that L had previously threatened to accuse defendant of touching her if he kept looking for her when she ran away. But, on the witness stand, the mother denied making that statement to police. Defendant argued that the contradiction was sufficient to allow the jury to infer that the mother had committed perjury. But the trial court refused to give the instruction, explaining that when "one witness remembers one thing about a conversation, [and] another witness remembers another one, then *** this is not an appropriate instruction to be given."

On appeal, the parties agree that the trial court erred in denying defendant's request for the "witness false in part" instruction. Although she did not directly quote the mother in her report, Detective Herring testified, "What's documented in my report is that [the mother] said that *** [L] told [defendant] to stop looking for her, because she was going to say that he touched her." But, when asked during direct examination if she said that to police, the mother said, "No." *Cf. Payne*, 366 Or at 608 (finding that it was a proper occasion to give the "witness false in part" instruction when one witness unequivocally denied referring to the defendant's race but the reporting officer directly quoted the witness as referring to his race). Viewing the evidence in the light most favorable to defendant (as the party who requested the instruction), we agree that there was sufficient evidence from which a reasonable juror could find that the mother consciously lied on the stand. Therefore, we agree that the trial court erred when it denied defendant's request for the instruction.

The only dispute between the parties is whether that error was harmless. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm despite error if there is "little likelihood that the error affected the verdict[.]" *State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003). To evaluate harm, we consider "the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *State v. Ashkins*, 357 Or 642, 660, 357 P3d 490 (2015). To that end, we summarize the relevant evidence presented at trial and the parties' competing theories.

In September 2019, defendant reported to the Beaverton Police Department that L had run away from home. L was 17 years old at the time and had been running away fairly frequently since she had turned 14. When she ran away, defendant often contacted police. On this particular occasion, L was with her boyfriend and another friend when she learned that defendant had reported her to police again. She was angry and told her boyfriend and her friend that defendant had raped her when she was younger. Soon afterward, she told her boyfriend's mother that defendant raped her when she was about 10 years old.

L returned home that night. When she arrived, she immediately asked her 12-year-old sister, A, to speak in private. There, the sisters apparently revealed to each other that defendant had sexually abused them both for an extended period of time, and they agreed to report the abuse to police. As a standard procedure for a returned runaway, an officer came to defendant's home to speak with L. The sisters disclosed the allegations of abuse to the officer. L reported that defendant had raped her when she was 11 years old and continued to touch her inappropriately until she turned 16. Similarly, A said that defendant had been sexually abusing her for about a year.

In the wake of those disclosures, police officers spoke with the girls' mother and defendant. Defendant denied any wrongdoing and surmised that L was making up the allegations in retaliation for his efforts to discipline her. Meanwhile, the mother's statements to Herring are the source of the present issue regarding the "witness false in part" instruction.

The mother spoke to Herring with the assistance of an officer acting as an informal Spanish interpreter. At trial, Herring testified that the mother reported that L had previously told defendant "to stop looking for her, because she was going to say that he touched her." However, the mother testified that she never made that statement to Herring.

Consistent with his earlier statement to police, defendant's theory at trial was that L was falsely accusing him of sexual abuse and had influenced A to do the same. It is no

surprise then that the mother's disputed statement was a key piece of evidence, as it supported defendant's theory by suggesting that L had planned the false allegations in advance as retaliation for defendant's efforts at disciplining her.

With that context in mind, we return to the question of harmlessness. From the outset, there is an important nuance to bear in mind. When evaluating the harm caused by the failure to give a "witness false in part" instruction, our focus is not on the significance of the triggering statement. In other words, the question is not whether the disputed statement—*i.e.*, that the mother told police that L had previously threatened to accuse defendant of touching her—was a significant fact in the case. The significance of the contradiction between the testimony of Herring and the mother is only that it triggered the need for the "witness false in part" instruction—the contradiction itself is irrelevant to the harm analysis. *See State v. Labossiere*, 307 Or App 560, 569-70, 477 P3d 1 (2020) (finding the failure to give the "witness false in part" instruction harmless where the defendant's harm argument focused only on the significance of the false testimony that triggered the need for the instruction, and he failed to "identify any *other* jury findings that the witness-false-in-part instruction could have informed" (emphasis in original)). The focus of our analysis is on the *other* testimony that the mother gave and whether the lack of a "witness false in part" instruction, which deprived the jury of useful guidance in how to evaluate that other testimony, may have affected the verdict. *See Payne*, 366 Or at 610 (explaining that the instruction "serves an important advisory function because it *** permits the jury to draw an inference that a willfully false witness who has violated her oath in one particular may well have done so in others").

For its part, the state argues that the remainder of the mother's testimony was relatively insignificant to the ultimate verdict because it was "focused primarily on helping the jury with background facts regarding family history and the events surrounding the victims' disclosure." We disagree.

As explained above, the testimony that triggered the need for the "witness false in part" instruction was

that the mother denied *telling police* that L had previously threatened to accuse defendant of touching her. But she also provided testimony that was significant yet factually distinct from that testimony:

    1.   She testified that she never heard L make such a threat to defendant at all;

    2.   She testified that she never relayed to defendant that L had made such a threat; and

    3.   She testified that she had previously told defendant to stop looking for L on the street when she ran away because "someone could think that he was trying to do something to her and abusing her."

We discuss each statement in turn.

       First, the mother testified that L never threatened to accuse defendant of touching her. And denying that L ever made such a threat in the first place is distinct from saying that she never told police about that threat. One could be true and the other false—*i.e.*, just because the mother did not tell police about the threat does not mean that L never made the threat. And whether L ever threatened to accuse defendant of touching her in retaliation for his attempts at discipline went to the heart of defendant's theory of defense.

       Second, during the state's rebuttal case, the mother denied telling defendant about L's threat to accuse him of "doing something to her." In doing so, the mother contradicted defendant's earlier testimony, in which he told the jury that "[The mother] called me and she told me that I shouldn't do anything anymore, because [L] was going to accuse me of something." Consequently, not only did the mother's testimony directly contradict defendant's version of events, but if believed, it also undermined his credibility overall.

       Finally, the mother testified that she had told defendant to stop looking for L on the street when she ran away because "someone could think that he was trying to do something to her and abusing her." That testimony is significant because it presented a potential source for the claim that L had threatened to accuse defendant of touching her. That is, if jurors believed the statement, they could infer

that the mother's general warning to defendant about her own concerns was simply misinterpreted by defendant and later by police as a threat that L had made. In essence, the testimony provided a potential path to reconcile the contradictions between Herring, the mother, and defendant. Had the jury credited the testimony, it could have found that L had never threatened to accuse defendant of touching her and that defendant and Herring simply misunderstood the mother relaying her own concerns. Again, that would have significantly undermined defendant's theory at trial.

Together those three pieces of testimony were significant because—assuming the jury believed them—they undermined defendant's theory that L falsely accused him of the crimes as she had previously threatened to do. Had the "witness false in part" instruction been given, it might have influenced whether the jury believed those three statements, which might have impacted the verdict. Therefore, we cannot say that the failure to give the instruction had little likelihood of affecting the verdict. *Davis*, 336 Or at 33. Having determined that reversal is required, we turn next to defendant's MJOA argument because it will affect the scope of that remand.

## MOTIONS FOR JUDGMENT OF ACQUITTAL

As stated above, the state charged defendant with seven counts of first-degree sexual abuse. Counts 1 through 3 named L as the victim and the remaining counts named A. As charged, each count required the state to prove that defendant "[s]ubjected another person to sexual contact" while the person was "less than 14 years of age." ORS 163.427(1).[3] At trial, defendant moved for a judgment of acquittal as to Counts 1 through 3, arguing that there was

---

[3]     ORS 163.427 provides:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age;

"(B) The victim is subjected to forcible compulsion by the actor; or

"(C) The victim is incapable of consent by reason of being mentally incapacitated, physically helpless or incapable of appraising the nature of the victim's conduct; or

legally insufficient evidence that L was less than 14 years of age at the time of the alleged conduct. Although the court acknowledged that the evidence was unclear as to precisely when the alleged conduct occurred, the trial court denied defendant's motions because it concluded that, despite the ambiguity about timing, there was enough to infer that the acts occurred before L turned 14 years old. On appeal, defendant challenges that ruling.

"'We review a trial court's denial of a motion for a judgment of acquittal for legal error, and we consider the facts in the light most favorable to the state and draw all reasonable inferences in the state's favor,' to determine 'whether the evidence is sufficient to permit a rational fact-finder to find all the elements of the charged crime beyond a reasonable doubt.'" *State v. Lugo*, 322 Or App 477, 479, 520 P3d 917 (2022) (quoting *State v. Yerton*, 317 Or App 538, 539, 505 P3d 428 (2022)). We summarize the relevant facts accordingly.

As described above, after defendant reported L to police as a runaway, she returned home and made allegations to a police officer. She told the officer, "I was raped in fifth grade and [defendant's] been doing it for a while, until like I turned 16." She said it "happened a lot of times," and that it involved "sexual intercourse and everything." L told her boyfriend's mother that defendant "raped" her when she was 10 years old. And during an interview at CARES Northwest, L explained that the conduct "started in fifth grade" but that she did not remember the very first time that it happened. She explained that "when nobody was home, *** [defendant] would touch me." Defendant would touch her vagina with his hands and penis, he would kiss her, and he would make L touch him.

The state did not charge defendant with rape, however, or allege a theory of sexual abuse involving sexual intercourse or contact between defendant's penis and L's vaginal area. Instead, its three charges of first-degree

"(b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.

"(2) Sexual abuse in the first degree is a Class B felony."

sexual abuse identified three specific factual theories: (1) that defendant touched L's "vaginal area with his hand" (Count 1); (2) that he touched "her mouth with his mouth" (Count 2); and that he "had her touch his penis with her hand" (Count 3). During trial, the state elected as a factual theory that "each of those counts is basically going to be the first time that it happened." Thus, the question is whether the evidence summarized above was enough to establish the first time that any of the three types of conduct specified in the indictment occurred when L was less than 14 years old.

We recognize that "[t]here is a difference between inferences that may be drawn from circumstantial evidence and mere speculation." *State v. Vaughn*, 175 Or App 192, 201, 28 P3d 636 (2001). "Reasonable inferences are permissible; speculation and guesswork are not." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Ultimately, we conclude that there was insufficient evidence to establish that defendant committed the charged acts while L was less than 14 years old without resorting to speculation.

To put it simply, L alleged ongoing sexual abuse that started when she was about 10 years old and ended when she was about 16 years old. The only act that she identified as occurring at any specific time was the "rape" that happened when she was in fifth grade (that is, when she was about 10 or 11 years old). The state argues that L's use of the term "rape" allows for the inference that defendant committed all three charged acts when she was in fifth grade—or at the very least, that defendant used his hand to touch L's vaginal area at that time. In other words, it argues that the word "rape" necessarily involves that conduct. But we disagree that that inference can reasonably be drawn from that term alone. The term "rape" would certainly allow a factfinder to reasonably infer that defendant's penis touched L's vaginal area. But it does not describe conduct that necessarily involves defendant touching L's vaginal area with his hand, kissing, or having L touch defendant's penis with her hand. It is possible that L subjectively intended the term "rape" to mean more than contact between defendant's penis and her vagina. But the jury could not have divined that subjective intent without resorting to speculation.

The state also argues that, understood in context, L's statements in her interview at CARES Northwest indicate that the charged acts occurred when she was in fifth grade. Specifically, it suggests that many of her descriptions of defendant's conduct relate back to the "rape" that occurred in the fifth grade. But having reviewed that interview in detail, we disagree. The context of L's statements in that interview did nothing to lessen the ambiguity as to the timing of the charged conduct. Accordingly, we conclude that the trial court erred when it denied defendant's MJOAs as to first-degree sexual abuse on Counts 1 through 3. That leaves us to determine the proper remedy.

The parties do not address on appeal the subject of lesser-included offenses. But the insufficiency of the evidence as to Counts 1 through 3 is limited only to the age element of the crimes, and as reflected in its verdict, the jury necessarily found that defendant subjected L to sexual contact when she was less than 18 years old. That is, again, because it was undisputed that the alleged sexual abuse involving L stopped when she was 16 years old. That means the jury necessarily found the elements of the lesser-included offense of third-degree sexual abuse, ORS 163.415.[4] That crime contains the same elements as first-degree sexual abuse, except that the age element is less than 18 years of age rather than 14.

Normally, that would require us to reverse the convictions on Counts 1 through 3 and remand for entry of convictions for those lesser-included offenses. *See State v. Slater*, 310 Or App 746, 759, 487 P3d 59 (2021) (explaining that we may remand for entry of a conviction for a lesser-included offense "where there is insufficient evidence to support the defendant's conviction for the charged offense, but where the state proved all the elements of a lesser-included offense that is subsumed in the charged offense"). However, the error with regard to the "witness false in part" instruction

---

[4] ORS 163.415 defines third-degree sexual abuse, in relevant part, as follows:

"(1) A person commits the crime of sexual abuse in the third degree if:

"(a) The person subjects another person to sexual contact and:

"*****

"(B) The victim is incapable of consent by reason of being under 18 years of age[.]"

necessitates the reversal of all convictions and remand for a new trial on all counts. Therefore, it is not appropriate to remand for entry of a conviction on the lesser-included offenses. Nor is it appropriate to allow the state to retry defendant for first-degree sexual abuse as to L. *See State v. Clyde*, 328 Or App 222, 227, 537 P3d 170 (2023), *rev den*, 371 Or 825 (2024) ("Double jeopardy bars retrial after \* \* \* an appellate finding of insufficient evidence."). Instead, as to Counts 1 through 3, the state is limited on remand to pursuing convictions for the lesser-included offenses of third-degree sexual abuse. *See State v. Burgess*, 240 Or App 641, 649, 251 P3d 765 (2011) (crafting appropriate remedy when neither outright reversal nor entry of lesser included conviction was appropriate on plain error review "given the idiosyncratic procedural posture" of the case).

## MENTAL-STATE INSTRUCTION

Finally, we address defendant's sixth assignment of error, in which defendant argues that the trial court plainly erred when it failed to instruct the jury that a "knowing" mental state attached to the conduct element of first-degree sexual abuse. We agree that the trial court plainly erred in failing to instruct the jury as to the applicable mental state. *See State v. Peckron*, 330 Or App 284, 287, 543 P3d 766, *rev den*, 372 Or 437 (2024) ("We agree that the trial court plainly erred in failing to instruct the jury on the required mental state for the element of subjecting the victim to sexual contact."). However, because the error can be easily avoided on remand, our decision to reverse on other grounds means that we have no need to decide whether the error was harmless or whether to exercise our discretion to correct it.

Reversed and remanded.