Argued and submitted September 8, peremptory writ to issue October 7, 1999

# STATE OF OREGON,
*Plaintiff-Relator,*

*v.*

# MYRON ROBERT SUTHERLAND, JR.,
*Defendant-Adverse Party.*

## (CC 983427CR; SC S46458)

987 P2d 501

Kaye E. McDonald, Assistant Attorney General, Salem, argued the cause for plaintiff-relator. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Peter J. Richard, of Aspell, Della-Rose & Richard, Klamath Falls, argued the cause and filed the brief for defendant-adverse party.

Emily Simon, Portland, argued the cause and filed the brief for *amici curiae* Oregon Criminal Defense Lawyers Association and State Public Defender. With her on the brief was David Groom, State Public Defender.

GILLETTE, J.

**GILLETTE, J.**

This is an original mandamus proceeding brought under ORS 34.250 and Article VII (Amended), section 2, of the Oregon Constitution. Petitioner, the State of Oregon (the state), asks this court to overturn an order of the circuit court entered before trial in the underlying criminal case, which presently is set for trial beginning on October 13, 1999, in the Klamath County Circuit Court. Defendant is charged with assault in the second degree, ORS 163.175. In its order, the trial court released defendant on conditions not relevant here, after refusing to impose a pretrial security release amount of not less than $50,000 under ORS 135.240(5), set out *post.*

The state sought an alternative writ of mandamus from this court directing the trial court to enter an order requiring that defendant be taken into custody pending his posting a security release deposit in an amount not less than $50,000 or to show cause why it had not done so. This court issued an alternative writ. The trial court declined to issue the order contemplated by the writ, the matter was briefed and argued, and the case now is before this court for decision. For the reasons that follow, a peremptory writ shall issue.

The right to pretrial release of persons who, like defendant, are accused of "Measure 11" offenses[1] is addressed in two subsections of ORS 135.240.[2] Subsection (4) of that statute provides, in part:

"(4)   Except as otherwise provided in subsection (5) of this section, when the defendant is charged with a crime listed in ORS 137.700 * * *:

---

[1] Assault in the second degree, ORS 163.175, is one of a group of offenses that are listed in ORS 137.700(2)(a) and that often are referred to as "Measure 11" offenses after an initiative measure that ORS 137.700 codifies, which voters approved in 1994. *See* ORS 137.700(2)(a)(G) (listing second-degree assault). Thus, assault in the second degree is an offense to which ORS 135.240 is applicable.

[2] The legislature enacted the statutory provisions at issue as part of more comprehensive legislation, Senate Bill 936, dealing with the Oregon criminal justice system. Or Laws 1997, ch 313. The parties have not asked us to address the constitutionality of that enactment as a whole, a question that the Court of Appeals addressed in *State v. Fugate,* 154 Or App 643, 963 P2d 686, *on recons* 156 Or App 609, 969 P2d 395 (1998), *rev allowed* 328 Or 275, 928 P2d 1173 (1999). We limit our analysis accordingly.

"(a)  Release shall be denied unless the court determines by clear and convincing evidence that the defendant will not commit new criminal offenses while on release.

"(b)  If the defendant wants to have a hearing on the issue of release, the defendant must request the hearing at the time of arraignment in circuit court. If the defendant requests a release hearing, the court must hold the hearing within five days of the request.

"(c)  At the release hearing, unless the state stipulates to the setting of security or release, the court shall determine whether probable cause exists to believe the defendant has committed an offense listed in ORS 137.700 * * * and, if so, whether the defendant would commit new crimes while on release. The state has the burden of producing evidence at the release hearing subject to ORS 40.015(4) [relating to proceedings not subject to the Oregon Evidence Code].

"(d)  The defendant may be represented by counsel and may present evidence on any relevant issue * * *.

"(e)  If the court determines that the defendant will not commit new crimes while on release, the court shall set security or other appropriate conditions of release. If the court does not determine that the defendant will not commit new crimes while on release, the court shall deny release."

Subsection (5) of ORS 135.240 provides, in part:

"If the United States Constitution or the Oregon Constitution prohibits application of subsection (4) of this section, then notwithstanding any other provision of law, the court shall set a security amount of not less than $50,000 for a defendant charged with an offense listed in ORS 137.700 * * * and may not release the defendant on any form of release other than a security release. In addition to the security amount, the court may impose any supervisory conditions deemed necessary for the protection of the victim and the community."

■  Thus, ORS 135.240(4) requires a trial court to deny release to a defendant accused of committing a Measure 11 offense, unless the court determines by clear and convincing evidence that the defendant will not commit any new crime while on release. ORS 135.240(5) then sets out an alternative

scheme to be applied if ORS 135.240(4) is found to be unconstitutional. Defendant, the trial court, and the state all agree that subsection (4) of ORS 135.240 is unconstitutional. As explained below, we conclude that that agreement is well founded.

Article I, section 14, of the Oregon Constitution, provides:

> "Offences (*sic*), except murder, and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong."

The question is whether ORS 135.240(4) is valid in light of that constitutional provision. To answer that question, we examine the text, case law, and history surrounding Article I, section 14. *See Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (setting out that methodology).

■ We observe, at the outset, that, by using the mandatory "shall," the text of Article I, section 14, *requires* courts to set bail for defendants accused of crimes other than murder or treason. As this court has explained, under that provision, "with certain exceptions the defendant in a criminal case * * * is entitled to be admitted to bail." *Hanson v. Gladden*, 246 Or 494, 495, 426 P2d 465 (1967); *see also Priest*, 314 Or at 417 (implying that Article I, section 14, grants most defendants accused of crimes a constitutional right to bail). The exceptions to that requirement are those set out in Article I, section 14, *viz.*, murder or treason. *Hanson*, 246 Or at 495-96.

ORS 135.240(4), by contrast, requires a court to *deny* release and, it follows, to deny bail, if the court concludes that the defendant might commit crimes while on release. *See generally Armatta v. Kitzhaber*, 327 Or 250, 279-80, 959 P2d 49 (1998) (stating that a voter-approved constitutional amendment setting out the same requirements for release contained in ORS 135.240(4) would change the standard for bail set out in Article I, section 14). Nothing of which we are aware permits a conclusion different from the one mandated by the text of Article I, section 14, and this court's interpretations of that text. *See Priest*, 314 Or at 418 (noting the lack

of history surrounding the Oregon framers' intent with regard to Article I, section 14). Accordingly, we conclude that ORS 135.240(4) is unconstitutional under Article I, section 14, of the Oregon Constitution. We turn to the issue that the parties have joined here, *viz.*, the constitutionality of ORS 135.240(*5*).

At the pretrial hearing in this case, defendant asserted that ORS 135.240(5) is unconstitutional on various grounds. After a brief colloquy, the trial court adhered to its ruling in previous cases that the statute is facially unconstitutional under Article I, section 16, of the Oregon Constitution,[3] as well as under various provisions of the United States Constitution.[4] As noted, the court then ordered defendant's release under conditions not at issue here.

■■    For a statute to be facially unconstitutional, it must be unconstitutional in all circumstances, *i.e.*, there can be no reasonably likely circumstances in which application of the statute would pass constitutional muster. *See, e.g., State v. Chakerian*, 325 Or 370, 381, 938 P2d 756 (1997) (for a statute to be deemed to be impermissibly vague, it must be shown to be "vague in all of its possible applications" (quoting *State v. Robertson*, 293 Or 402, 411 n 8, 649 P2d 569 (1982)); *United States v. Salerno*, 481 US 739, 745, 107 S Ct 2095, 2100, 95 L Ed 2d 697 (1987) (so holding under the United States Constitution in connection with an examination of the constitutionality of the federal Bail Reform Act). Defendant and *amici* do not argue that the $50,000 amount itself makes the statute facially unconstitutional. Both acknowledge (and we agree) that there will be circumstances in which imposing a security release requirement in that amount would be reasonable.

Defendant and *amici* do advance three other arguments as to why ORS 135.240(5) is unconstitutional, however. First, they argue that the effect of the statute is to set bail for all Measure 11 defendants without a hearing, contrary to due process. Second, they argue that the statute sets

---

[3] Article I, section 16, of the Oregon Constitution, provides that "[e]xcessive bail shall not be required."

[4] We read the trial court transcript as establishing that the trial court's ruling was that the statute is facially unconstitutional.

a mandatory minimum security amount of $50,000 for all Measure 11 defendants, which violates due process and deprives defendants of the presumption of innocence. Third, they argue that a $50,000 security amount is excessive for indigent defendants and arbitrarily divides Measure 11 defendants into two classes, those who can pay the security amount and those who cannot.

The premise underlying defendant's and *amici's* arguments is that, under ORS 135.240(5), a Measure 11 defendant is not entitled to a hearing or individualized consideration of his or her circumstances before the trial court imposes and enforces the minimum $50,000 security release requirement. That premise itself raises at least two questions of statutory construction. The first is whether a right to a hearing exists under the statute. The second is whether, absent a provision granting such a right in the statute, the right nonetheless exists because of a separate source of law, either statutory or constitutional. We begin by examining the text and context of ORS 135.240(5). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (setting out methodology for interpreting statutes).

As to the question whether there is a right to a hearing under ORS 135.240(5), defendant and *amici* correctly note that the statute does not expressly *provide* for a hearing. That much is clear. It is equally clear, however, that the statute does not expressly *deny* a Measure 11 defendant the right to a hearing to challenge the constitutionality of the statute on an as-applied basis, if the defendant requests such a hearing. From text (and context) it is clear that the statute does not grant defendant a hearing.

We turn to the question whether some other source of law aids defendant. We know of no statute that would do so. However, the state acknowledged at oral argument that, if ORS 135.240(5) withstands a facial challenge based on the *amount* of security specified in the subsection (and we agree with all the parties that it does), then Measure 11 defendants still may challenge the imposition of the statutory amount on an as-applied basis. The ability to do so, the state asserted, presupposes a right to a hearing at which the trial court may

consider the individual circumstances of a particular defendant.

■　In making that concession, the state did not identify any particular source of law for its view, but we think that the source of law is (as the trial court held) Article I, section 16, of the Oregon Constitution. The injunction that "excessive bail shall not be required" necessarily presupposes a factual inquiry into the issue of "excessiveness." Only a hearing could provide that factual inquiry. We hold that any defendant who wishes to make an "as applied" challenge to the propriety of imposing the specified security release amount of $50,000 or higher under ORS 135.240(5) has a constitutional right to a hearing to address that question. *See Delaney v. Shobe*, 218 Or 626, 628, 346 P2d 126 (1959) (holding, under "excessive bail" provision of Article I, section 16, of Oregon Constitution, criminal defendant bears burden of establishing at hearing that amount of bail imposed is excessive).

■　It follows from the foregoing that, as the state suggested at oral argument, there is a source of law outside ORS 135.240(5) that entitles a Measure 11 defendant to a hearing or individualized consideration on the amount, if any, that must be posted as security. Because that source of law is a constitutional one, ORS 135.240(5) is subordinate. Therefore, the $50,000 specified by that statute as the minimum amount that "shall" be imposed must be read as the minimum amount that is to be imposed initially, on arrest. Thereafter, defendant may request a hearing for the purposes of establishing that, as to him or her, requiring that or a higher amount as security is constitutionally impermissible. If defendant requests such a hearing, then he or she must be given the opportunity to demonstrate that, as to that defendant, the statutory amount is "excessive" and, if that demonstration is made, then to have the court set some lesser amount that is not excessive. *See Delaney*, 218 Or at 628 (illustrating process).

■　The foregoing discussion disposes of defendant's and *amici*'s arguments that ORS 135.240(5) allows no hearing with respect to security release and that the statute imposes a mandatory minimum security release amount in all cases. Defendant and *amici*'s final argument, that the statutory

amount divides defendants into two classes based on wealth, is not well taken. Any amount set for security release classifies defendants in that manner. Thus, unless the whole concept of bail is constitutionally impermissible—and defendant and *amici* do not argue that it is—that argument does not assist them.

We hold that ORS 135.240(4) violates Article I, section 14, of the Oregon Constitution. We also hold that ORS 135.240(5) is not facially unconstitutional under either the Oregon or United States Constitutions, because circumstances exist in which applying that statute would not violate either constitution. The trial court's ruling to the contrary was error. However, we hold that Measure 11 defendants may challenge the constitutionality of the minimum security release amount of $50,000 in ORS 135.240(5) on an as-applied basis and may request a hearing before the trial court for the purpose of challenging the propriety of imposing that or a higher amount.

Peremptory writ to issue. Pursuant to ORAP 1.20(4), ORAP 11.17, and ORAP 14.05(2)(c), and notwithstanding ORAP 9.25, a combined peremptory writ and appellate judgment shall issue on October 11, 1999, unless a petition for reconsideration is both filed and physically received by the Office of the State Court Administrator by October 8, 1999. Any timely petition for reconsideration will stay issuance of the peremptory writ and appellate judgment until the court acts on such petition.