Argued and submitted June 30, 2011, affirmed July 11, 2012

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**CARL BRENT WORTHINGTON,**
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0800403; A142983

282 P3d 24

Ryan Scott argued the cause for appellant. With him on the briefs was Mark Cogan.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

ORTEGA, P. J.

_____

* Brewer, J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

Following a jury trial, defendant was convicted of criminal mistreatment in the second degree, ORS 163.200, for withholding medical attention from his 15-month-old daughter, who died of bacterial pneumonia and a blood infection. On appeal, defendant offers a combined argument as to why the trial court erred by refusing to give his requested jury instruction and by denying his motion in arrest of judgment.[1] Defendant contends that, because his failure to seek medical attention for his daughter was rooted in his religious practice, the jury instructions and the indictment should have provided that a knowledge standard, rather than a criminal negligence standard, is required in order to convict him of criminal mistreatment in the second degree. We conclude that defendant's proposed jury instruction is not a correct statement of law and that his motion in arrest of judgment was not a proper vehicle to raise his as-applied constitutional challenge. For those reasons, the trial court did not err in refusing to give defendant's requested jury instruction and in denying his motion in arrest of judgment. Accordingly, we affirm.

Defendant is a member of the Followers of Christ Church. Like most members of his denomination, he believes in faith healing—the use of prayer, laying of hands, and anointing with olive oil to heal the sick—and that the use of modern medicine indicates a lack of faith. Defendant and his family have never used modern medicine.

About three months after her birth, defendant's daughter, A, developed what appeared to be excess fat on the side of her neck. By the time she was 14 months old, the growth began to swell and became more noticeable.

One day, about two months after the swelling began, A developed cold symptoms and became more congested as the day progressed. Later that day, defendant's parents and other members of their church visited defendant's home to fast, pray, and lay hands on A and anoint her with olive oil. At some point that evening, defendant's wife gave A a bottle

---

[1] Defendant also contends that the trial court committed plain error in failing to give a jury concurrence instruction. We reject that argument without discussion.

filled with water and a small amount of wine, a practice defendant's church follows when a person is sick. A did not rest at all that night, and the next morning and afternoon, defendant's family and some of the church members who had stayed overnight again prayed and laid hands on A. Later in the afternoon, A sounded less congested and had more energy—but that evening, she stopped breathing. Defendant went into A's bedroom and anointed her with oil, and she died that evening.

An autopsy revealed that A was in the lowest fifth percentile of children her age for weight and height and that her death was caused by bacterial pneumonia and a blood infection (sepsis) associated with a large benign cystic mass (cystic hygroma). The examiner concluded that the cyst compromised A's body's ability to defend against pneumonia.

Defendant and his wife were indicted for second-degree manslaughter and second-degree criminal mistreatment. The jury acquitted defendant's wife of both charges; defendant was acquitted of manslaughter but convicted of criminal mistreatment.

On appeal, defendant, in a combined argument, contends that the trial court erred in refusing to give his requested jury instruction and in denying his motion in arrest of judgment. Both arguments are premised on his contention that, because his failure to seek medical attention for his daughter is rooted in his religious practice of faith healing, the state could not convict him of second-degree criminal mistreatment based on a criminal negligence standard. Rather, according to defendant, the state must establish that defendant knew that his conduct would bring about his daughter's death. Defendant's position is premised on the Supreme Court's decision in *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 903 P2d 351 (1995).

In *Meltebeke*, an Evangelical Christian employer preached at an employee, pressured him to attend his church, and condemned him for his sinful ways. The employee did not tell the employer that he felt offended, harassed, or intimidated by his actions. *Id.* at 135. Some time after the employee was discharged for poor work performance,

he filed a claim with the Bureau of Labor and Industries (BOLI), which found that the employer had violated a BOLI rule by discriminating against his employee on the basis of religion. *Id.* at 136-37.

On review, the Supreme Court held that the state may not restrict a person's religious practices unless it first demonstrates that the person is consciously aware that the conduct has an effect forbidden by law. *Id.* at 152. The court held that the BOLI rule at issue, though constitutional on its face, "offends Article I, sections 2 and 3, by not requiring that BOLI find that [the employer] knew in fact that his actions in exercise of his religious practice had an effect forbidden by the rule." *Id.* at 153.

Defendant here contends that, consistently with the holding in *Meltebeke*, the state must establish that he knew that his conduct of withholding medical treatment from his daughter would cause an effect forbidden by law. As we shall explain, there is a fundamental problem with each of defendant's arguments, and, therefore, we do not address whether *Meltebeke* extends to the issue before us.

We begin by addressing defendant's proposed jury instruction. Defendant contends that, in light of his as-applied constitutional challenge, the trial court erred by refusing to give his requested jury instruction imposing a knowledge standard for the criminal mistreatment charge. The state makes several arguments in response, including that defendant's requested instruction is not a correct statement of the law.

We review the trial court's refusal to give a requested jury instruction for errors of law. *State v. Branch*, 208 Or App 286, 288, 144 P3d 1010 (2006). "If a proffered instruction is refused * * * there is no error if the instruction is not a correct statement of the law." *State v. Barnes*, 329 Or 327, 334, 986 P2d 1160 (1999). Before turning to defendant's proposed jury instruction, we begin with an overview of the pertinent statutes.

ORS 163.200(1)(a) provides that

"[a] person commits the crime of criminal mistreatment in the second degree if, with criminal negligence and * * * [i]n violation of a legal duty to provide care for another person, the person withholds necessary and adequate food, physical care or medical attention from that person[.]"

ORS 161.085(10), in turn, provides the definition of criminal negligence:

" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(8) provides the definition of knowledge:

" 'Knowingly' or 'with knowledge' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

Defendant argues that a knowing mental state should apply because of the protection of religious freedom that is provided under Article I, sections 2 and 3, of the Oregon Constitution. Those sections provide:

"* * * All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences.

"* * * No law shall in any case whatever control the free exercise, and enjoyment of religeous [sic] opinions, or interfere with the rights of conscience."

Against that backdrop, we turn to defendant's proposed instruction, which read as follows:

"In order to find the defendant guilty of Manslaughter in the Second Degree or Criminal Mistreatment in the Second Degree, the State must prove that the defendant acted with knowledge that his * * * act or failure to act would bring

about the death of [A]. Knowledge requires an awareness on the part of the defendant that *the death of [A] would occur as a result of the defendant's act or failure to act.*"

(Emphasis added.) Thus, defendant's proposed instruction would require the jury to determine whether he knew that his conduct would lead to a particular result. The state responds that ORS 161.085(8) does not require knowledge that a particular result will occur, but only that "a person acts with an awareness that the conduct of the person is of a [particular] nature."

We need not reach the parties' arguments concerning knowledge. Here, under ORS 163.200(1)(a), the gravamen of the offense is the failure to provide necessary and adequate medical care; the statute does not require that that conduct must lead to the death of another—or, indeed, to any particular result. Accordingly, even if defendant is correct that, under *Meltebeke*, a knowing mental state applies here—an issue we do not decide—the state would be required to prove only that defendant knowingly withheld necessary and adequate medical care for his daughter, not that defendant had knowledge that his conduct of withholding medical care from his daughter would lead to any particular result, including her death. Thus, his requested jury instruction is not a correct statement of law because knowledge that the victim's *death* would occur simply is inapposite where the charged crime is criminal mistreatment.[2] Accordingly, the trial court did not err in refusing to give it.

Defendant next contends that the trial court erred in denying his motion in arrest of judgment. The indictment charged defendant with "unlawfully and with criminal negligence withhold[ing] necessary and adequate medical attention from [A.]" He contends that, in light of his as-applied constitutional argument, the indictment failed to state a crime. That is, because the indictment alleged a negligence standard rather than a knowledge standard, defendant contends that the indictment failed to state a crime as applied to him.

---

[2] We express no opinion as to whether the instruction would have been appropriate as to the manslaughter charge, given that defendant was acquitted of that charge.

Further, defendant argues that a motion in arrest of judgment is a proper vehicle for his as-applied constitutional challenge.[3] In support, defendant relies primarily on *State v. Reigard*, 243 Or App 442, 259 P3d 966, *rev den*, 350 Or 717 (2011), and *State v. McKenzie*, 307 Or 554, 771 P2d 264 (1989). Defendant's reliance on those cases, however, is misplaced because the question of whether a motion in arrest of judgment is the proper vehicle to raise an as-applied constitutional challenge was not before the court in either case.

A motion in arrest of judgment is authorized by ORS 136.500, which provides:

"A motion in arrest of judgment is an application on the part of the defendant that no judgment be rendered on a plea or verdict of guilty. It may be founded on either or both of the grounds specified in ORS 135.630(1) and (4), and *not otherwise*."

(Emphasis added.) ORS 135.630, in turn, provides, in pertinent part:

"The defendant may demur to the accusatory instrument *when it appears upon the face thereof*:

"(1) If the accusatory instrument is an indictment, that the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

"* * * * *

"(4) *That the facts stated do not constitute an offense*[.]"

(Emphasis added.) As is apparent from the statutes, motions in arrest of judgment and demurrers are intimately related, *see McKenzie*, 307 Or at 560, and ORS 136.500 makes clear that a motion in arrest of judgment may be founded only on two specified grounds, both of which must appear upon the face of the accusatory instrument, and may not be based on extrinsic facts. Accordingly, defendant may

---

[3] Defendant suggests that no other method exists to raise his "'as applied' challenge to an indictment based on constitutional infirmity[.]" However, the record in this case indicates the availability of other methods for raising such a challenge. Defendant did raise that challenge through his proposed jury instruction, and the record indicates that he also did so in the context of a motion for a judgment of acquittal, the denial of which he did not appeal.

not raise his as-applied challenge by means of a motion in arrest of judgment because it relies on facts extrinsic to the indictment.

We have reached similar conclusions in the context of demurrers. In *State v. Cervantes*, 232 Or App 567, 223 P3d 425 (2009), we held that, on a pretrial demurrer, the trial court could not consider the defendant's as-applied constitutional challenge to the statutes underlying the charges of causing another person to ingest a controlled substance and unlawful application of controlled substance to a minor because such consideration involved facts that did not appear on the face of the indictment.[4] *Id.* at 573-74; *see also State v. Chakerian*, 325 Or 370, 373-74 n 4, 938 P2d 756 (1997) ("The indictment was written in terms of the statute, without elaboration. * * * It follows that, because this case arises out of the trial court's pretrial decision to sustain defendants' demurrer, defendants are unable to assert at this time that the statute is unconstitutional as applied to them.").

Here, the indictment tracks the language of the second-degree criminal mistreatment statute without elaboration of the facts pertaining to defendant's as-applied constitutional challenge. Thus, in order to resolve defendant's motion in arrest of judgment, the court would need to consider extrinsic facts of defendant's religious practices. Accordingly, under those circumstances, a motion in arrest of judgment was not an appropriate vehicle for raising defendant's as-applied challenge, and the trial court did not err in denying it.

Affirmed.

---

[4] Because the state invited the trial court's error, this court affirmed the trial court's decision. *Id.* at 576-77.