Argued and submitted April 29, 2022; convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of second-degree abuse of corpse, remanded for resentencing, otherwise affirmed May 3, petition for review denied September 14, 2023 (371 Or 333)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CLAYTON LAMONT HOWARD,
aka Clayton Howard,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR26119; A173135

529 P3d 247

Defendant was convicted of two counts of second-degree abuse of corpse, ORS 166.085, after his girlfriend died from an accidental drug overdose and defendant concealed her body with clothes, storage totes, and part of a mattress. Defendant continued to use the bedroom where the body was located, including having sex with another woman on the bed. On appeal, defendant argues that the trial court erred in four regards: (1) denying his mid-trial motion to dismiss based on ORS 166.085 being unconstitutionally vague as applied; (2) refusing to give the witness-false-in-part jury instruction; (3) instructing the jury that it could return nonunanimous guilty verdicts; and (4) not merging the guilty verdicts on the two counts of second-degree abuse of corpse. *Held*: The court did not err in denying defendant's motion to dismiss. Properly construed, ORS 166.085 provided a reasonable degree of certainty and fair notice as to what conduct was prohibited, and it was not unconstitutionally vague as applied to defendant's conduct. To the extent that a misconstruction of ORS 166.085 at trial might have led to defendant being convicted for conduct that was not actually prohibited, that issue had to be addressed through a motion for judgment of acquittal or jury instructions; it did not make the statute unconstitutionally vague. As for the alleged instructional errors, the court did not err in refusing to give the witness-false-in-part instruction, and the erroneous nonunanimity instruction was harmless because both verdicts were unanimous. Finally, as to merger, the state conceded that the guilty verdicts should have merged, and the Court of Appeals accepted that concession as well taken.

Convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of second-degree abuse of corpse; remanded for resentencing; otherwise affirmed.

Thomas M. Ryan, Judge.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet,

Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.*

AOYAGI, P. J.

Convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of second-degree abuse of corpse; remanded for resentencing; otherwise affirmed.

_____

* Jacquot, J., *vice* James, J. pro tempore.

**AOYAGI, P. J.**

Defendant's girlfriend, N, died of an accidental drug overdose in the bedroom that she shared with defendant. Upon finding N dead, defendant concealed her body with clothes, storage totes, and part of the mattress. Defendant continued to use the bedroom, including having sex with another woman on the bed. N's family members eventually confronted defendant at the apartment, which led to the discovery of N's body. For concealing the body (Count 1) and for having sex on the bed (Count 2), defendant was convicted of two counts of second-degree abuse of corpse, ORS 166.085. On appeal, he challenges four rulings by the trial court: (1) denial of his mid-trial motion to dismiss Counts 1 and 2 based on ORS 166.085 being unconstitutionally vague as applied to him; (2) refusal to give the witness-false-in-part jury instruction; (3) instructing the jury that it could return nonunanimous guilty verdicts; and (4) not merging the verdicts on Counts 1 and 2. As explained below, we reverse and remand for the trial court to merge the guilty verdicts on Counts 1 and 2 and resentence defendant, and we otherwise affirm.

## I.  FACTS[1]

In March 2019, N died of an accidental drug overdose in the bedroom of her apartment. At the time of her death, N was dating defendant, and he was living in the apartment. Another woman, S, was also staying there temporarily. Defendant became sexually involved with S before N's death. One morning, defendant discovered that N had died. Her body was on the bedroom floor between the bed

---

[1] The law is surprisingly unclear regarding the proper vehicle to raise an as-applied constitutional challenge. *See State v. Worthington*, 251 Or App 110, 116-17 & n 3, 282 P3d 24 (2012) (explaining that an as-applied constitutional challenge cannot be raised by a demurrer or a motion in arrest of judgment if the defendant is relying on facts extrinsic to the indictment, and suggesting that a motion for judgment of acquittal or proposed jury instructions might be the proper vehicle). In part for that reason, the law is also unclear as to which set of "facts" should be used. Given the nature of an as-applied challenge, it seems that some mechanism should exist by which the defendant can argue that a statute is unconstitutionally vague as applied to the actual conduct found by the jury. We need not explore those issues in this case, however, because defendant moved to dismiss at the close of the state's case, the trial court viewed the evidence in the light most favorable to the state in ruling on the motion, and the parties on appeal agree with that approach. We therefore state the facts in the light most favorable to the state.

and the wall. There is no contention that defendant played any role in N's death or that he moved her body. Defendant concealed N's body, however, to delay the discovery of her death. He piled a large quantity of clothing on top of and around the body and placed four empty storage totes upside down on top of the clothing. He then rotated the bed's queen-sized mattress 90 degrees relative to the box spring, so that one end was lying atop the storage totes and somewhat raised.

When N's family was unable to reach her for two days, a group of relatives and friends came to the apartment to confront defendant as to N's whereabouts. That led to the police searching the apartment and finding N's body. The police had to move the mattress, the storage totes, and the clothing to find N's body.

During a police interview, defendant admitted that he found N dead and concealed her body. He also admitted to having sex with S on the bed after N's death.

Defendant was charged with two counts of second-degree abuse of corpse, ORS 166.085 (Counts 1 and 2). He was also charged with identity theft (Count 3) and attempted second-degree theft (Count 4), based on factual allegations that are not relevant to this appeal.

The charges were tried to a jury. Defendant appeared *pro se*. At the close of the state's evidence, three things happened, based on motions made by defendant. First, the state was required to elect on Counts 1 and 2. It elected that Count 1 was based on defendant violating ORS 166.085(1)(a) by covering N's body with clothing, storage totes, and a mattress, and it elected that Count 2 was based on defendant violating ORS 166.085(1)(a) by having sex with S on the mattress. *See* ORS 166.085(1)(a) ("A person commits the crime of abuse of corpse in the second degree if, except as otherwise authorized by law, the person intentionally *** [a]buses a corpse[.]"). As to both counts, the state's theory was that defendant abused N's corpse by treating it "in a manner not recognized by generally accepted standards of the community." *See* ORS 166.085(3) ("'[A]buse of corpse' includes treatment of a corpse by any person in a manner not recognized by generally accepted standards of the community ***.").

Second, defendant moved to dismiss Counts 1 and 2 on the ground that ORS 166.085 was unconstitutionally vague as applied to him. The trial court expressed some concern about the statute, describing it as a "close question" and a "good motion." However, it ultimately denied the motion, concluding that the statute gave "adequate notice" and was not unconstitutionally vague as applied to defendant. Third, defendant moved for judgment of acquittal on all counts, arguing that the state's evidence was legally insufficient for the jury to find him guilty. The trial court denied that motion as to Counts 1, 2, and 3 and granted it as to Count 4.

The trial proceeded. At the close of all evidence, the court instructed the jury in a manner consistent with the state's theory of the case. That included instructing the jury, as to Counts 1 and 2: "Abuse of corpse includes treatment of a corpse by any person in a manner not recognized by generally accepted standards of the community."[2] The court declined to give some instructions requested by defendant, including the witness-false-in-part instruction and a jury-unanimity instruction.

The jury found defendant guilty on Counts 1 and 2. It found him not guilty on Count 3. Defendant requested that the court merge the guilty verdicts on Counts 1 and 2 into a single conviction, which the court denied. Accordingly, defendant was convicted of two counts of second-degree abuse of corpse. Defendant appeals.

## II.   UNCONSTITUTIONAL VAGUENESS

In his first assignment of error, defendant argues that the trial court erred by denying his motion to dismiss Counts 1 and 2 on the ground that ORS 166.085 is unconstitutionally vague as applied to him.

A.   *The Legal Standard for Unconstitutional Vagueness*

Article I, section 21, of the Oregon Constitution requires that criminal statutes "not be so vague as to permit a judge or jury to exercise uncontrolled discretion in

---

[2] Much of the discussion of jury instructions appears to have occurred off the record. However, based on what is in the record, defendant did not object to the "community standards" instruction.

punishing defendants, because this offends the principle against *ex post facto* laws." *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985). Overly vague criminal laws also implicate Article I, section 20, in that giving "unbridled discretion to judges and jurors to decide what is prohibited in a given case" necessarily "results in the unequal application of criminal laws." *Id.* "Some degree of *ad hoc* legislation by juries in finding defendants not guilty may be unavoidable and socially desirable to ease the edges of the criminal law, but the free-wheeling power to legislate so as to find a defendant guilty should not be institutionalized in a criminal statute." *State v. Hodges*, 254 Or 21, 28, 457 P2d 491 (1969). Although a statute need not define an offense so precisely that a person will automatically be able to determine in advance that specific conduct is prohibited, "a reasonable degree of certainty is required by Article I, sections 20 and 21." *Graves*, 299 Or at 195.

Under the Fourteenth Amendment to the United States Constitution, a criminal statute that is written so as to allow for arbitrary and discriminatory enforcement and that impermissibly delegates "basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis" violates due process. *Grayned v. City of Rockford*, 408 US 104, 108-09, 92 S Ct 2294, 33 L Ed 2d 222 (1972). A criminal statute must provide "fair warning," such that a "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id*. at 108.

Whether a statute is unconstitutionally vague is a question of law. *See State v. Illig-Renn*, 341 Or 228, 238-39, 142 P3d 62 (2006). "It is well settled, under both the state and federal constitutions, that, unless the exercise of First Amendment liberties is impaired, vagueness challenges are reviewed solely to determine whether application of the contested statute to the defendant's conduct violates the 'void for vagueness' doctrine." *State v. Butterfield*, 128 Or App 1, 7, 874 P2d 1339, *rev den*, 319 Or 625 (1994). That is, except for First Amendment challenges, a defendant may not challenge a statute as unconstitutionally vague on its face, but instead must challenge it as unconstitutionally vague as

applied.[3] *Id*.; *see also State v. Albee*, 118 Or App 212, 216, 847 P2d 858, *rev den*, 316 Or 528 (1993) ("Where the statute at issue purports to regulate or proscribe First Amendment rights, courts have allowed defendants to challenge the statute as vague and overbroad as it applies to others. However, where, as here, First Amendment rights are not affected, the defendant must show the statute is unconstitutional as applied to him." (Internal quotation marks and citations omitted.)).

Thus, the question before us is whether ORS 166.085(1)(a) is unconstitutionally vague as applied to defendant's conduct. "We consider state constitutional claims before considering federal constitutional claims." *State v. Sanders*, 343 Or 35, 39, 163 P3d 607 (2007). Under the Oregon Constitution, defendant must "demonstrate that he was unable to determine from a reading of [the challenged statute] that *his* conduct was prohibited." *Butterfield*, 128 Or App at 8 (emphasis in original). Under the federal constitution, defendant must show that he did not have fair notice that his conduct was prohibited, *i.e.*, that a person of ordinary intelligence would not have had a reasonable opportunity to know that the conduct was prohibited, so as to allow the person to act accordingly. *Grayned*, 408 US at 108.

The Oregon and federal standards are similar but not identical, and the Supreme Court has suggested that federal principles are sometimes improperly imported into the Oregon constitutional analysis. *State v. Speedis*, 350 Or 424, 435, 256 P3d 1061 (2011). In practice, however, neither party has suggested that one constitutional standard is more

---

[3] "A facial challenge asserts that lawmakers violated the constitution when they enacted the statute; an as-applied challenge asserts that executive officials *** violated the constitution when they enforced the statute." *State v. Carr*, 215 Or App 306, 310 n 5, 170 P3d 563 (2007), *rev den*, 344 Or 109 (2008) (internal quotation marks and brackets omitted). "For a statute to be facially unconstitutional, it must be unconstitutional in all circumstances, *i.e.*, there can be no reasonably likely circumstances in which application of the statute would pass constitutional muster." *State v. Sutherland*, 329 Or 359, 365, 987 P2d 501 (1999). Of course, a defendant making an as-applied challenge may make arguments that would also apply to other people. The challenged statute must be unconstitutionally vague as applied to the defendant, but there is no requirement that it is unconstitutionally vague *only* as applied to the defendant. Indeed, given the extremely limited availability of facial challenges, such an approach would make the vaguest statutes the most impervious to challenge.

rigorous than the other, or that one would lead to a different result from the other, and we are not aware of any vagueness case in which a statute has been deemed to pass muster under the Oregon Constitution but not the federal constitution. The Oregon and federal standards tend to lead to the same result, even though framed somewhat differently.

B.   *Proper Statutory Construction of ORS 166.085(1)(a)*

We now turn to the proper construction of ORS 166.085(1)(a)—the statute under which defendant was convicted—as relevant to evaluating the statute for vagueness.

There are two abuse-of-corpse statutes in Oregon. Regarding first-degree abuse of corpse, ORS 166.087 provides:

> "(1)   A person commits the crime of abuse of corpse in the first degree if the person:
>
> "(a)   Engages in sexual activity with a corpse or involving a corpse; or
>
> "(b)   Dismembers, mutilates, cuts or strikes a corpse.
>
> "(2)   Abuse of corpse in the first degree is a Class B felony."

Regarding second-degree abuse of corpse, ORS 166.085 provides:

> "(1)   A person commits the crime of abuse of corpse in the second degree if, except as otherwise authorized by law, the person intentionally:
>
> "(a)   Abuses a corpse; or
>
> "(b)   Disinters, removes or carries away a corpse.
>
> "(2)   Abuse of corpse in the second degree is a Class C felony.
>
> "(3)   As used in this section and ORS 166.087, *'abuse of corpse' includes treatment of a corpse by any person in a manner not recognized by generally accepted standards of the community* or treatment by a professional person in a manner not generally accepted as suitable practice by other members of the profession, as may be defined by rules applicable to the profession."

(Emphasis added.)

The prosecution theory in this case was that defendant "abuse[d] a corpse" in violation of ORS 166.085(1)(a) by treating N's corpse "in a manner not recognized by generally accepted standards of the community," ORS 166.085(3). Both in the trial court and in their opening, answering, and reply briefs on appeal, the parties have treated ORS 166.085(3) as defining "abuse" for purposes of ORS 166.085(1)(a), and all of their arguments have been founded on that premise.

However, a close review of ORS chapter 166 reveals that the parties and the trial court missed (or misunderstood) a significant aspect of the statutory scheme, which led us to request supplemental briefing after this appeal was argued. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (recognizing our responsibility to correctly construe statutes, including considering interpretations not offered by the parties). Specifically, the verb "abuse" in ORS 166.085(1)(a) is actually defined in a separate but related statute, ORS 166.075, that creates the crime of abuse of venerated objects. ORS 166.075(2) provides:

> "As used in this section and ORS 166.085, 'abuse' means to deface, damage, defile or otherwise physically mistreat in a manner likely to outrage public sensibilities."

That statutory definition of "abuse" was never mentioned in the trial court, but it is potentially relevant to whether the statute is unconstitutionally vague.

What purpose does ORS 166.085(3) serve then, if "abuse" is already statutorily defined? To answer that question, we turn to the legislative history.

The legislature enacted both ORS 166.075 and ORS 166.085 in 1971. Or Laws 1971, ch 743, §§ 224, 225. ORS 166.075 provided that "[a] person commits the crime of abuse of venerated objects if he intentionally abuses a public monument or structure, a place of worship or burial, or the national or state flag." ORS 166.075(1) (1971), *amended by* Or Laws 1995, ch 261, § 2. ORS 166.085(1) provided that a person commits the crime of abuse of corpse if a person intentionally (1) "[a]buses" a corpse; or (2) [d]isinters, removes, or carries away a corpse. ORS 166.085(1) (1971), *amended by* Or Laws 1985, ch 207, § 2; Or Laws 1993, ch 294, § 1.

The legislature adopted a single definition of "abuse" for both statutes, which was placed in ORS 166.075(2) (1971): "As used in this section and ORS 166.085, 'abuse' means to deface, damage, defile or otherwise physically mistreat in a manner likely to outrage public sensibilities."

Fourteen years later, in 1985, the legislature passed a bill to improve regulation of the death care industry. *See* Testimony, Ways and Means Committee, SB 876-A, May 8, 1985 (statement of Sen John Brenneman) (Senate Bill (SB) 876 "deals with revisions in the regulations of cemeteries, crematoriums and the disposition of human remains"). The impetus for the bill was an incident in Lincoln City in which a funeral director mishandled the remains of numerous people, and ultimately pleaded guilty to dozens of misdemeanor charges (including abuse of corpse), but served minimal jail time. *Id.* (SB 876 "was introduced as a result of the tragedy that occurred in Lincoln City on and after October 1984, when former Lincoln City funeral director Dale Omsberg was found to have 16 unembalmed and rotting bodies stored in the garage at his Lincoln City mortuary"); *see also* Exhibit D, Senate Committee on Human Resources, SB 876, Apr 10, 1985 (explaining that with the increased penalty for abuse of corpse and "new systems of checks and balances, a person would have to think twice about attempting to commit this crime in the future").

As part of the 1985 bill, abuse of corpse was changed from a Class A misdemeanor to a Class C felony. Or Laws 1985, ch 207, § 2. The legislature also added what is now ORS 166.085(3). *See* ORS 166.085(3) (1985) ("As used in this section, 'abuse of corpse' includes treatment of a corpse by any person in a manner not recognized by generally accepted standards of the community or treatment by a professional person in a manner not generally accepted as suitable practice by other members of the profession, as may be defined by rules applicable to the profession."). At the same time, it amended ORS 146.090. As amended, ORS 146.090(1)(h) requires the state medical examiner to investigate any death "[i]n which a human body apparently has been disposed of in an offensive manner," and ORS 146.900(2) defines "offensive manner" to mean "a manner offensive to the generally accepted standards of the community."

The Lincoln County district attorney was involved in developing the new language in ORS 146.090 and ORS 166.085, and he indicated to a senator that if that language had been part of ORS 166.085 earlier, he "could have prosecuted to get a longer conviction" in the Omsberg case. Tape Recording, Joint Ways and Means Subcommittee on Human Resources, SB 876, May 14, 1985, Tape 306, Side A (statement of Sen Hannon). It appears that the amendments were intended to clarify the statutes to make prosecution easier and to increase the penalties for violations, rather than actually changing what was criminalized.[4] *See* Testimony, Ways and Means Committee, SB 876-A, May 8, 1985 (statement of Sen John Brenneman) (explaining that "[t]he terms 'offensive manner' and 'abuse of corpse' have been more clearly defined in the statutes which would have been of assistance to the Lincoln County District Attorney in his action against Mr. Omsberg" and that the goal was to give the medical examiner the "necessary authority" to investigate a situation like that in Lincoln City and that district attorneys could prosecute in such circumstances).

Finally, in 1993, the legislature enacted ORS 166.087, creating the crime of first-degree abuse of corpse. *See* Or Laws 1993, ch 294, § 2. The crime described in ORS 166.085 became second-degree abuse of corpse. *Id.* The legislature amended ORS 166.085(3) to make it applicable to *both* degrees of the crime: "As used in this section and ORS 166.087, 'abuse of corpse' includes * * *." ORS 166.085(3) (1993). The statutes have remained unchanged since the 1993 amendments.

Based on text, context, and legislative history, we construe "abuses a corpse" in ORS 166.085(1)(a) to mean "to deface, damage, defile or otherwise physically mistreat [a

---

[4] Senator Hannon explained that, as to the new language now codified at ORS 166.085(3), "if that language had been part of the statute, Mr. Omsberg would've gotten more than 25 days in county jail, or whatever it was, courtesy of the taxpayers, for all the damage and trauma and everything else that he created." Tape Recording, Joint Ways and Means Subcommittee on Human Resources, SB 876, May 14, 1985, Tape 306, Side A (statement of Sen Hannon). Although not discussed directly in the legislative history itself, the public pleadings in the Omsberg case show that Omsberg demurred to the indictment charging him with abuse of corpse, including arguing that his conduct was not covered by ORS 166.085, which demurrer was unsuccessful.

corpse] in a manner likely to outrage public sensibilities." ORS 166.075(2) (definition of "abuse"). And we construe ORS 166.085(3) as a clarification applicable to *all* means of committing first- and second-degree abuse of corpse, including but not limited to that in ORS 166.085(1)(a).

Two aspects of the text in context make particularly clear that, when ORS 166.085(3) states what "'abuse of corpse' includes[,]" it is referring to *the crime* of abuse of corpse generally. *See* ORS 166.085(3) ("As used in this section and ORS 166.087, 'abuse of corpse' includes treatment of a corpse by any person in a manner not recognized by generally accepted standards of the community or treatment by a professional person in a manner not generally accepted as suitable practice by other members of the profession, as may be defined by rules applicable to the profession."). First, there are quotation marks around "abuse of corpse," which is a noun phrase, and the only place that the noun phrase "abuse of corpse" appears in ORS 166.085 or ORS 166.087 is in the name of the crime. ORS 166.085(1)(a) does not use the noun phrase "abuse of corpse" but, rather, uses a verb and object—"abuses a corpse"—and ORS 166.075(2) already defines "abuse" as a verb. Second, and perhaps most tellingly, ORS 166.085(3) applies to *both* first-degree (ORS 166.087) and second-degree (ORS 166.085) abuse of corpse, which only makes sense if it is understood to clarify the nature of the crime generally.

We disagree with defendant's argument in his supplemental brief that ORS 166.085(3) and ORS 166.075(2) should be understood as *alternative* definitions of "abuse," either of which will support a conviction for second-degree abuse of corpse. In defendant's view, ORS 166.085(3) criminalizes any intentional treatment of a corpse in a manner not recognized by generally accepted standards of the community, or not generally accepted as suitable practice by other members of the profession in the case of professionals, essentially creating alternative means of committing second-degree abuse of corpse independent of those described in ORS 166.085(1)(a) and (b). Given the somewhat unusual way in which ORS 166.085 is written, that misconstruction is understandable. Indeed, the Uniform Criminal Jury Instructions currently reflect a similar

misconstruction.[5] However, in our view, the text, context, and legislative history do not support construing ORS 166.085(3) in that manner. Rather, for the reasons explained, we understand ORS 166.085(3) as a clarification of each of the existing means of committing first-degree and second-degree abuse of corpse stated in ORS 166.085(1) and ORS 166.087(1).[6]

It might be useful to consider an example of a situation in which ORS 166.085(3) would have a clarifying effect. Recall that ORS 166.085(3) was added to clarify the crime of abuse of corpse in a way that would have been helpful to the Lincoln County district attorney in 1984 when prosecuting a funeral director for mishandling human remains. With that in mind, consider ORS 166.087(1)(b), under which a person who "cuts" a corpse commits first-degree abuse of corpse. ORS 166.085(3) clarifies that ORS 166.087(1) applies to death care professionals who cut a corpse "in a manner not generally accepted as suitable practice by other members of the profession, as may be defined by rules applicable to the profession." That is a helpful clarification.

The remaining language of ORS 166.085(3), regarding "treatment of a corpse by any person in a manner not recognized by generally accepted standards of the community," is more enigmatic. It appears that the legislature may have intended that language at least in part as a backstop applicable to death care professionals when no professional

---

[5] Currently, the uniform criminal jury instruction for first-degree abuse of corpse is based solely on ORS 166.087, even though ORS 166.085(3) plainly states that it applies to ORS 166.087. *See* UCrJI 2320 (2022). The uniform criminal jury instruction for second-degree abuse of corpse is based on ORS 166.085 and ORS 166.075(2)—*i.e.*, it correctly uses the definition of "abuse" in ORS 166.075(2) to describe the means of committing the crime identified in ORS 166.085(1)(a)—but it incorrectly treats ORS 166.085(3) as adding two alternative means of committing the crime, in addition to those stated in ORS 166.085(1)(a) and (b). *See* UCrJI 2320 (2022).

[6] Our construction of the statute largely aligns with the state's proposed construction in its supplemental brief, with one exception. The state suggests that the use of the word "treatment" in ORS 166.085(3) ties to the word "mistreat" in the definition of "abuse" in ORS 166.075(2). It is possible that the 1985 legislature used intentionally similar language. However, ORS 166.085(3) has always applied to both subsections of ORS 166.085(1), and since 1993 it has also applied to both subsections of ORS 166.087(1). We understand ORS 166.085(3) to clarify the application of all subsections of both ORS 166.085 and ORS 166.087, rather than being uniquely tied to ORS 166.085(1)(a).

standards existed, although it obviously also applies to nonprofessionals. Tape Recording, Joint Ways and Means Subcommittee on Human Resources, SB 876, May 14, 1985, Tape 306, Side A (discussion involving Sen Hannon). The language appears to have been copied over from the contemporaneous amendment to ORS 146.900, which clarified that the state medical examiner is required to investigate a death where the body appears to have been "disposed of in an offensive manner," ORS 146.900(1)(h), *i.e.*, "a manner offensive to the generally accepted standards of the community," ORS 146.900(2).

We can only conclude that the "community standards" clause was intended to have a similar clarifying effect as the "professional" clause, but applicable to everyone. Consider again ORS 166.087(1)(b), under which a person who "cuts" a corpse commits first-degree abuse of corpse. ORS 166.085(3) clarifies that cutting a corpse violates ORS 166.087(1) if done "in a manner not recognized by generally accepted standards of the community." That might exclude, for example, cutting the hair or nails of a corpse as part of a death rite.

C.   *ORS 166.085(1)(a) as Applied to Defendant's Conduct*

We now turn to the ultimate question of whether ORS 166.085 is unconstitutionally vague as applied to defendant's conduct. We are immediately faced with a conundrum for which we have found no precedent in the case law on constitutional vagueness challenges to criminal statutes: Defendant was convicted of violating ORS 166.085(1)(a) in a trial in which everyone—the parties, the trial court, and the jury—misunderstood what the state needed to prove for defendant to be found guilty. As a result, defendant was convicted of second-degree abuse of corpse, ORS 166.085(1)(a), based on his having treated N's corpse "in a manner not recognized by generally accepted standards of the community[,]" ORS 166.085(3), without the jury ever being asked to find whether defendant "deface[d], damage[d], defile[d] or otherwise physically mistreat[ed]" N's corpse "in a manner likely to outrage public sensibilities," ORS 166.075(2).

In the state's view, it does not matter what statutory construction was used to convict defendant, because we can and should consider only the correct statutory construction to determine whether ORS 166.085 is unconstitutionally vague. The persuasiveness of that argument is undermined, however, by the fact that the state relies on case law involving facial challenges. *See, e.g.*, *State v. Ausmus*, 336 Or 493, 498, 85 P3d 864 (2003); *State v. Meyer*, 120 Or App 319, 324, 852 P2d 879 (1993). For purposes of a facial challenge, the application of the statute to a particular defendant is irrelevant, so the only possible construction that could matter is the correct construction.

Defendant takes the opposite position from the state. He argues that whether ORS 166.085(1) is unconstitutionally vague as applied to him can and should be determined based on how it was actually applied to him, even if it was misapplied. As with the state, however, defendant's case law does not really support his position, in that defendant relies on cases involving facial challenges and limiting constructions. When an appellate court imposes a limiting construction to save a statute that would otherwise be facially unconstitutional, it makes sense that a conviction that was based on the statute as written would be overturned and a new trial required. *See, e.g.*, *Ashton v. Kentucky*, 384 US 195, 198, 86 S Ct 1407, 16 L Ed 2d 469 (1966) ("[W]here an accused is tried and convicted under a broad construction of an Act which would make it unconstitutional, the conviction cannot be sustained on appeal by a limiting construction which eliminates the unconstitutional features of the Act, as the trial took place under the unconstitutional construction of the Act."); *Shuttlesworth v. City of Birmingham*, 382 US 87, 91-92, 86 S Ct 211, 15 L Ed 2d 176 (1965) (narrowly construing an ordinance so that it would not violate the First Amendment, and reversing a conviction because it appeared that the trial court "may have found the petitioner guilty only by applying the literal—and—unconstitutional terms of the ordinance").

Here, however, we are not imposing a limiting construction to save an otherwise facially unconstitutional statute. This is an as-applied challenge. Moreover, the definition of "abuse" in ORS 166.075(2) has been part of the statutory

scheme for as long as abuse of corpse has been a crime, and the relationship of ORS 166.085(3) to the rest of ORS 166.085 is a normal question of statutory construction. For whatever reason, the state misconstrued the statute during the trial court proceedings, and neither defendant nor the trial court realized that it was a misconstruction. That is fundamentally different from a trial court correctly applying a statute as written and then an appellate court imposing a limiting construction to save the statute from unconstitutionality.

We have been unable to find a single case from any jurisdiction in a similar posture, nor have the parties cited one. That leaves us little choice but to apply logic and fairness as best we can to a most unusual situation. Ultimately, we conclude that the appropriate course is for us to assess whether, *properly construed*, ORS 166.085 is unconstitutionally vague as applied to defendant's conduct. That approach is consistent with the "notice" principle that underlies vagueness determinations. When defendant engaged in the conduct at issue, the actual statutory language is what did or did not put him on notice as to whether his conduct would constitute the crime of second-degree abuse of corpse. How some individual prosecutor might read the statute at some future date is irrelevant to whether, before defendant acted, he would have been able to tell with a reasonable degree of certainty from reading the statute whether the conduct was prohibited, *Butterfield*, 128 Or App at 8 (Oregon Constitution), and had a reasonable opportunity to know what was prohibited so as to conform his conduct to the law, *Grayned*, 408 US at 108 (federal constitution).

We therefore proceed to evaluate whether, properly construed, ORS 166.085 is unconstitutionally vague as applied to defendant's conduct.

1. *Count 1*

Count 1 was based on defendant having concealed N's body with clothes, empty storage totes, and part of a mattress. It is debatable whether, correctly construed, ORS 166.085(1)(a) actually prohibits such conduct, *i.e.*, whether concealing a corpse with such items is a form of physical mistreatment that meets the statutory definition of "abuse"

in ORS 166.075(2). However, the fact that ORS 166.085 (1)(a) might not actually prohibit defendant's conduct, under a correct construction of the statute, is a separate question from whether ORS 166.085(1)(a) is unconstitutionally vague as to what it prohibits.

As statutorily defined in ORS 166.075(2), a person "abuses" a corpse and thus violates ORS 166.085(1)(a) by defacing, damaging, defiling, or otherwise physically mistreating a corpse in a manner likely to outrage public sensibilities. To "deface, damage, defile or otherwise physically mistreat" is a clear standard that readily withstands constitutional scrutiny for vagueness. As for "in a manner likely to outrage public sensibilities,"[7] such a limiting phrase is unlikely to create a constitutional problem when attached to a clear phrase like "deface, damage, defile or otherwise physically mistreat." It is also comparable to other ascertainable standards that have survived constitutional vagueness challenges. *See State v. Chakerian*, 325 Or 370, 383-84, 938 P2d 756 (1997) (rejecting vagueness challenge to a statute that used the phrase "creates a grave risk of causing public harm," because the term "grave" created an ascertainable standard, such that the statute did not delegate uncontrolled discretion to the jury); *State v. Corpuz*, 49 Or App 811, 818-19, 621 P2d 604 (1980) (rejecting vagueness challenge to statute that used the phrase "under circumstances manifesting extreme indifference to the value of human life," because the statute was "not of the dragnet or catch-all variety" and used a phrase within "ordinary powers of comprehension," such that it provided "a sufficient standard for the determination of guilt by the jury"); *see also, e.g.,* *State v. Glover*, 17 Ohio App 3d 256, 259, 479 NE 2d 901, 904 (1984) (concluding that Ohio statute that made it a crime for a person to treat a human corpse "in a way that he knows would outrage reasonable family sensibilities" or "in a way

---

[7] The legislative history indicates that "likely to outrage public sensibilities" means conduct "that shocks the sensibilities of surviving kin and the public at large." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 225, 219 (July 1970); *see State v. Carpenter*, 365 Or 488, 497 n 4, 446 P3d 1273 (2019) ("When evaluating statutes developed by the Criminal Law Revision Commission, we look to both the commentary and the discussions that preceded the adoption of the final draft as legislative history for the resulting laws.").

that would outrage reasonable community sensibilities" was not unconstitutionally vague, and noting that "outrage" is a commonly understood term).

Properly construed, ORS 166.085 and ORS 166.075(2) together provide a "reasonable degree of certainty," *Graves*, 299 Or at 195, and "fair notice," *Grayned*, 408 US at 108, as to what conduct is prohibited by ORS 166.085(1)(a), at least as applied to defendant in this case. To the extent that the conduct for which defendant was convicted on Count 1 might not actually violate ORS 166.085(1)(a), that is an issue that needed to be resolved through a motion for judgment of acquittal or proposed jury instructions. In other words, if defendant was "wrongly" convicted on Count 1, it is not because ORS 166.085(1)(a) itself is unconstitutionally vague as applied to his conduct, but because the jury was misinstructed based on a misconstruction of ORS 166.085(1)(a).

Ultimately, although the trial court's reasoning for denying defendant's motion to dismiss Count 1 was incorrect, in that its constitutional vagueness analysis was based on a misconstruction of the statute, the court did not err in denying the motion, because ORS 166.075(1)(a) is not unconstitutionally vague as to whether it prohibits the conduct at issue in Count 1.

2. *Count 2*

We reach a similar conclusion on Count 2. Count 2 was based on defendant having sex with S on the bed while part of the mattress overhung the area where N's body lay. It is possible that ORS 166.085(1)(a), correctly construed, did not actually prohibit defendant's conduct. The state did not present any evidence that defendant's conduct had any physical effect on N's corpse, let alone an effect that would qualify as physical mistreatment. For example, there was no evidence that defendant or S lay on the part of the mattress that overhung the storage totes, or that the mattress moved in any significant way during the unspecified sexual activity. It is also undisputed that N's body was cushioned by many layers of clothing and the totes.

However, as with Count 1, the question before us is not whether defendant's conduct actually violated ORS

166.085(1)(a), but whether ORS 166.085(1)(a) is unconstitutionally vague as to whether it prohibited that conduct. It is not.

When properly construed, ORS 166.085(1)(a) provides a reasonable degree of certainty and fair notice as to whether defendant's conduct is prohibited. It very well may not be, but that is an issue that needed to be resolved through a motion for judgment of acquittal or proposed jury instructions. As with Count 1, if defendant was "wrongly" convicted on Count 2, it is not because ORS 166.085(1)(a) itself is unconstitutionally vague as applied to his conduct, but because the jury was misinstructed based on a statutory misconstruction. That is not an error that can be fixed through a constitutional vagueness challenge, as it would essentially require us to declare a nonexistent statute—ORS 166.085(1)(a) without ORS 166.075(2)—unconstitutionally vague as applied.

As with Count 1, although the trial court's reasoning was incorrect, in that its constitutional vagueness analysis was based on a misconstruction of the statute, the court did not err in denying the motion as to Count 2, because ORS 166.085(1)(a) is not unconstitutionally vague as to whether it prohibits the conduct at issue in Count 2.

## III.   WITNESS-FALSE-IN-PART INSTRUCTION

In his second assignment of error, defendant contends that the trial court erred by denying his request for the "witness false in part" instruction. ORS 10.095(3) provides that a jury is "to be instructed by the court on all proper occasions * * * [t]hat a witness false in one part of the testimony of the witness may be distrusted in others." It is a "proper occasion" to give the instruction when, viewing the evidence in the light most favorable to the party requesting the instruction, the evidence is sufficient "for the jury to decide that at least one witness consciously testified falsely" concerning "a material issue." *State v. Payne*, 366 Or 588, 607, 468 P3d 445 (2020). It is legal error for a trial court to refuse to give "a timely requested and legally correct witness-false-in-part statutory instruction." *Id*. Such error will not lead to reversal, however, if the error was harmless,

*i.e.*, if it had little likelihood of affecting the verdict. *Id.* at 609.

Defendant argues that there was sufficient evidence for the jury to find that two witnesses consciously testified falsely as to whether any family members assaulted defendant in N's apartment on the day that the police found N's body. One witness testified that she was not aware that any assaults occurred while she was in the apartment. The other witness testified she did not recall assaulting defendant. Defendant views whether an assault occurred as a "material" issue because his position at trial was that the mattress got rotated over the body during N's family members' assault on him, rather than his moving it intentionally to conceal the body.

We conclude that any error in failing to give the witness-false-in-part instruction was harmless. "As the Supreme Court's holding in *Payne* reflects, the principal purpose of the witness-false-in-part instruction is to assist the jury in assessing the credibility of a witness's testimony once it has found that the witness has perjured herself in *some other aspect* of her testimony." *State v. Labossiere*, 307 Or App 560, 569, 477 P3d 1 (2020) (emphasis in original). "The instruction is not intended to assist the jury in determining whether a witness has testified falsely in the first instance." *Id.* Here, as in *Labossiere*, the portion of the witnesses' testimony that defendant claims that a jury could have found to be consciously false is the *same* testimony that he claims entitled him to the instruction. *See id.* at 568-69.

As such, even if defendant was entitled to the instruction, there is little likelihood that not giving it was prejudicial to him, given defendant's theory as to how the witnesses perjured themselves. *See id.* at 569-70 ("Even if the jury in this case had determined that S's testimony about defendant's use of a bat was false, defendant does not identify any *other* jury findings that the witness-false-in-part instruction could have informed." (Emphasis in original.)). Moreover, it is apparent from the verdict that the jury rejected defendant's trial testimony as to how the mattress came to be rotated. That is an additional reason that any error was harmless. *See State v. Chemxananou*, 319 Or App

636, 639, 510 P3d 954, *rev den*, 370 Or 303 (2022) ("[T]he jury necessarily concluded that the witness testimony was *not* false in part. Because the witness-false-in-part instruction has no effect if the factfinder does not first conclude that a witness testified falsely, the failure to give the instruction was harmless." (Emphasis in original.)).

Accordingly, we reject the second assignment of error.

## IV.   JURY-UNANIMITY INSTRUCTION

In his third assignment of error, defendant contends that the trial court erred by denying his request for a jury instruction that a guilty verdict must be unanimous. The state concedes the error but maintains that it was harmless; we agree. Under the Sixth Amendment, a criminal defendant may be convicted of a felony or other serious offense only by unanimous verdict, so the denial of the instruction was erroneous. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 1397, 206 L Ed 2d 583 (2020). However, defendant was convicted by unanimous verdicts, as established by a jury poll, so the instructional error was harmless. *See State v. Kincheloe*, 367 Or 335, 338-39, 478 P3d 507 (2020), *cert den*, ___ US ___, 141 S Ct 2837 (2021). The third assignment of error therefore fails.

## V.   MERGER

In his fourth assignment of error, defendant challenges the trial court's denial of his request to merge the guilty verdicts on Counts 1 and 2.

Under ORS 161.067(3), repeated violations of the same statutory provision against the same victim in a single criminal episode are separately punishable only if they were separated "by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." As the party asserting that defendant's conduct underlying Counts 1 and 2 was separately punishable under ORS 161.067(3), it was the state's burden to prove either that the conduct occurred in two separate criminal episodes, *State v. Martin*, 322 Or App 266, 268, 519 P3d 132, *rev den*, 370 Or 694 (2022) ("The state bears the burden of

proving by a preponderance of evidence that each offense was a separate criminal episode." (Internal quotation marks omitted.)), or that the two acts were separated by a sufficient pause to avoid merger, *State v. Barton*, 304 Or App 481, 499, 468 P3d 510 (2020) ("The state, as the party asserting that defendant's conduct is separately punishable for purposes of ORS 161.067(3), bears the burden of adducing legally sufficient evidence of the requisite sufficient pause." (Internal quotation marks and ellipses omitted.)).

"We review the trial court's ruling on whether to merge the guilty verdicts for legal error and are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them." *State v. Moore*, 319 Or App 136, 144, 510 P3d 907, *rev den*, 370 Or 303 (2022). Here, the state concedes that, on this record, the state failed to meet its burden and that the trial court should have merged the guilty verdicts on Counts 1 and 2. We accept that concession and, accordingly, reverse and remand for merger and resentencing.

Convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of second-degree abuse of corpse; remanded for resentencing; otherwise affirmed.